DORIS WOMACK ADAMS v. STATE CAPITAL LIFE INSURANCE COMPANY

No. 7110SC311

(Filed 14 July 1971)

1. **Rules of Civil Procedure § 56— summary judgment — applicability**
   Summary judgment is the correct procedure in the absence of any genuine issue as to any material fact. G.S. 1A-1, Rule 56.

2. **Insurance § 13— life insurance — application of insured — offer — acceptance**
   An application for insurance is a mere offer, which must be accepted before a contract of insurance can come into existence.

3. **Contracts § 2— acceptance — silence and inaction**
   Silence and inaction do not amount to any acceptance of an offer.

4. **Insurance § 13— insurer's acceptance of the application — delay or inaction — presumption**
   No inference or presumption of acceptance can be drawn from mere delay or inaction by the insurer in passing on the application of insurance in the absence of additional circumstances.

Adams v. Insurance Co.

**5. Insurance § 13— life insurance — conditional payment of initial premium — death of insured — rejection by insurer**

The payment of the initial premium of a life insurance policy some three days before the death of the prospective insured was subject to the terms of the conditional receipt providing for acceptance by the company upon its unconditional approval of the insured's application; and where the undisputed evidence was that the company rejected the application twelve days after the death of the prospective insured, and that the company did not act unreasonably, arbitrarily, or in bad faith, the policy never became effective.

APPEAL by plaintiff from *Clark, Superior Court Judge,* 4 January 1971 Session of WAKE Superior Court.

This is an action to recover $20,000 alleged to be due plaintiff as beneficiary on a contract of life insurance.

On 2 February 1968 the nineteen-year-old son of plaintiff, Tony Wayne Adams, (Tony) made written application for a $10,000 life insurance policy with accidental double indemnity. The application was made to Stephen W. Dunn, authorized agent for the defendant.

Just above the date and signature of Tony, the application contained the following:

"It is agreed that upon acceptance and retention of a policy with plan, additional benefits, premiums, amount, beneficiary, rights or income settlement other than applied for, this application shall be for such modified policy and for such number of policies as may be issued. It is further agreed that any policy issued on this application may contain provisions regarding Aviation under which the liability of the Company is limited.

All the statements and answers in this application including those made in Part II below (and the statements and answers which may be made to the Medical Examiner in conjunction with any examination that may be required for the issuance of the policy applied for) are made to induce the Company to issue the policy and are true. The policy shall not take effect unless and until it is delivered to the Insured and the first premium is paid during the Insured's lifetime, except as may be otherwise provided in any conditional receipt issued. All later premiums shall be due on the dates specified in the policy. No agent or

Adams v. Insurance Co.

other person, except the President, a Vice-President, Secretary or Assistant Secretary of the Company has the authority to accept any representations or information not contained in this application or to modify, or enlarge, any contract of insurance or to waive any requirement in the application or in the contract of insurance."

At the time of making the application, no premium was paid. The agent Dunn made two return trips to the home of Tony for the purpose of collecting the first premium on the proposed policy. On the second trip, on February 13, 1968, the plaintiff, mother of Tony, gave Dunn her personal check in the amount of $11.70 for the first premium. At this time she requested Dunn to give her a conditional receipt. Dunn informed her that the conditional receipt was attached to the original application, and it had been sent to the defendant and therefore he could not give her a conditional receipt but told her that the "bank draft tendered to him would serve as a conditional receipt."

On 14 February 1968 the defendant had not issued its policy of insurance but prepared an amendment to the application which contained an additional question reading:

"Have you had a physical examination to enter military service?

Yes _____ No _____

If 'Yes,' were any abnormalities noted?

Yes _____ No _____"

This amendment to the application was sent by defendant to its agent Dunn to procure the consideration and signature of Tony.

On 15 February 1968 the check given by plaintiff on behalf of Tony for the first premium was deposited by the defendant and credited to its "application cash in suspense" account.

At approximately 8:00 o'clock p.m. on 16 February 1968, Tony was accidentally killed as a result of a train-car collision.

On 17 February 1968 Agent Dunn returned to the home of Tony to submit the proposed amendment to the application for his consideration and signature. At that time, Dunn saw a

wreath on the door and left his card attached to the front screen door. Dunn returned to the home on 19 February 1968, and at that time learned that Tony was dead.

On 28 February 1968 the defendant issued its check in the amount of $11.70 representing refund of application cash submitted by the plaintiff for the first premium. The following day, 29 February 1968, Agent Dunn, together with another agent of the defendant, Larry Gibson, returned to the home of plaintiff and informed the plaintiff that he had been there previously and thereupon left with the plaintiff the check for $11.70; that at no time up to and including 29 February 1968, did the defendant make any reference to the plaintiff concerning the amended application form.

The defendant made a motion for summary judgment. This motion was allowed, and the action was dismissed on its merits. The plaintiff appealed.

*William T. McCuiston for plaintiff appellant.*

*Young, Moore & Henderson by B. T. Henderson II, for defendant appellee.*

CAMPBELL, Judge.

[1]   There was no dispute as to the facts involved, and since there was not presented any genuine issue as to any material fact, summary judgment was the correct procedure. G.S. 1A-1, Rule 56.

[2-4]   An application for insurance is a mere offer, which must be accepted before a contract of insurance can come into existence. Silence and inaction do not amount to an acceptance of an offer. No inference or presumption of acceptance can be drawn from mere delay or inaction by the insurer in passing on the application in the absence of additional circumstances. *Bryant v. Insurance Co.*, 253 N.C. 565, 117 S.E. 2d 435 (1960).

[5]   At most the evidence on behalf of the plaintiff shows a conditional payment of the first premium. This would not constitute a contract of insurance. The conditional receipt attached to the original application and which Agent Dunn referred to when he told the plaintiff that her check would serve as a conditional receipt stated:

" . . . If the application be unconditionally approved by the Company at its Home Office on the plan, for the amount and at the premium rate applied for, and if also the applicant at the date of the application or the medical examination whichever is the later date, is an acceptable insurable risk under the Company's rules, the insurance so applied for shall be effective from such later date. . . . "

In *Cheek v. Insurance Co.*, 215 N.C. 36, 1 S.E. 2d 115 (1939), it was held that a receipt does not of itself constitute a contract of insurance. " ' . . . If the application is not accepted in the proper exercise of the company's right, and the insurance, therefore, is refused, the binding slip ceases *eo instanti* to have any effect. It does not insure of itself, but is merely a provision against any illness supervening it, if there is afterwards an acceptance of the application, upon which it depends for its vitality.' The contract of insurance becomes effective upon approval of the application at the home office and the delivery of the policy is not a prerequisite." The undisputed evidence in this case established the fact that the application was never accepted by the defendant, and there was no evidence that in making the determination not to accept the application, the defendant company acted unreasonably, arbitrarily, or in bad faith. See *McLean v. Life of Virginia*, 11 N.C. App. 87, 180 S.E. 2d 431 (1971).

Affirmed.

Chief Judge MALLARD and Judge HEDRICK concur.