166 So. 721

## CRANFORD v. NATIONAL SURETY CORPORATION.

### 7 Div. 359.

Supreme Court of Alabama.

Jan. 30, 1936.

Rehearing Denied March 5, 1936.

Motley & Motley, of Gadsden, for petitioner.

FOSTER, Justice.

■■ On certiorari to the Court of Appeals, we adhere to the rule applicable· to common-law certiorari, that only questions of law will be considered. But that includes the question of whether we agree with the application of the law to the facts as found and recited by that court. Reichert Milling Co. v. George, 230 Ala. 589, 162 So. 402, and cases there cited, Hood v. State, 230 Ala. 343, 162 So. 543, and we only consider the questions which were treated by the Court of Appeals.

■ But when there is no dispute about the facts, we examine the record for a more complete understanding of those features of it which are treated. Fairbanks, Morse & Co. v. Dees, 220 Ala. 604, 126 So. 621; Hood v.·State, 230 Ala. 343, 162 So. 543. This naturally includes pleadings, charges, and contracts which that court has interpreted in the opinion under consideration.

That opinion does not in this case interpret pleadings, nor treat demurrers to them, nor many other matters argued in brief on this petition and set out in it. But the result reached by that court is controlled by its interpretation of a contract there referred to. It only sets out one clause of that contract, and we will refer to the record to examine it as a whole in order to consider that clause.

In assuming certain obligations of the National Surety Company, called the old company by written contract dated April ·30, 1933, this appellee in paragraph II agreed, as follows: "Subject to the exclusions, exceptions and conditions hereinafter contained, hereby assumes liability for and agrees to pay (c) all losses occurring after the first day of May 1933 * * * under any and all bonds, policies and contracts of indemnity or insurance by the old company which may be in force and unexpired at midnight of April 30, 1933," as enumerated in that paragraph and limited by the exclusions and exceptions set forth in paragraph III. Among the bonds enumerated in that paragraph as included are "public official bonds." This suit is on such a bond of a sheriff for a

L. B. Rainey, of Gadsden, and Ball & Ball, of Montgomery, opposed.

default in his official capacity covered by the bond, and which occurred after May 1, 1933.

The agreed facts show that prior to May 1, 1933, other claims and suits were pending against the sheriff and the old company, and this was known to both companies. The contract in paragraph III proceeds to recite that the assumption of liability by appellee is subject to the following exclusions and exceptions: (a) certain contracts of guaranty not here material; (b) liability under bonds or policies where prior to May 1, 1933, notice of cancellation has been given; (c) liability for losses arising from, or caused by, acts committed prior to May 1, 1933, under court bonds; (d) liability under depository bonds covering deposits in banks which may be closed on the first day of May, 1933; (4) on such bonds when though the bank is then open, it is on a restricted basis; (f) (this is a clause affecting the transaction now involved, and will be quoted in hæc verba) "Liability in any other case or under any other bond on contract of indemnity or insurance where any notice has been received by or for the old company prior to May 1, 1933, that a loss has or may have occurred under such bond or other contract of indemnity or insurance." Since notice had been given of losses which occurred prior to May 1, 1933, on the sheriff's bond, the Court of Appeals held that the bond or contract of reinsurance did not apply to the sheriff's bond at all, and so that losses which thereafter occurred were not covered, the same as those which had previously occurred.

■ The question is whether that feature of paragraph III (f) meant that the reinsurance contract should entirely exclude such bond, or merely meant to add emphasis to paragraph II, by repeating that losses prior to May 1, 1933, were not included in the contract. The Court of Appeals construed it to exclude such contracts entirely so as not to apply to loss thereafter occurring. We are asked to review that holding. It is said that such interpretation which the Court of Appeals placed on the contract is aided by the circumstance that no liability certificate was issued to supplement the contract in its coverage of this sheriff's bond. But, as we have shown, the contract, paragraph II, by its terms, expresses an assumption of liability without the need of a supple-

mentary certificate. It has no recital which shows that such a certificate is contemplated or necessary to fix liability. It is not shown in the agreed statement of facts that such certificates were issued as to other bonds, or, if so, the parties affected by the bond in question knew of that circumstance, or that it was in any manner acquiesced in by them. Under the terms of the contract as written, plaintiff could sue on it, if it covered plaintiff's loss. United States Fire Ins. Co. v. Hecht, ante, p. 256, 164 So. 65; Empire Life Ins. Co. v. Landman, 213 Ala. 248, 104 So. 425.

■ The reinsurance contract was of such nature that the proper courts of New York, where those corporations were created, were called upon to and did approve it. Application of People by Van Schaick, 239 App.Div. 490, 268 N.Y.S. 88, 91; People, by Van Schaick, v. National Surety Co., 264 N.Y. 473, 191 N.E. 521. In describing that contract so approved, the opinion noted that it "provided that the new company would assume future losses on unexpired bonds and policies in selected lines of preferred risks," and "for the assumption of all losses occurring on and after May 1, 1933, on fidelity [c 1], surety [c 2], forgery [c 3], * * * crime and merchant's protective [c 4] bonds and burglary, hold-up, and theft [c 5], plate glass [c 6] and credit insurance [c 7] policies." The opinion also states, "The contract expressly excluded all losses concerning which notice was sent prior to May 1, 1933; that is, all losses occurring prior to that date." (III f.) The bond of the sheriff here thought to be "rehabilitated" is one of those enumerated in paragraph II, as to which the contract is made expressly to apply when the loss occurred on or after May 1, 1933, since it is a fidelity, also a public official bond. (c 1.) The opinion of the New York court refers to the contract as assuming all losses occurring under such a bond after May 1, 1933.

We think the opinion thus intended to interpret paragraph III f, in connection with all the other features of the contract to mean that it was the loss which occurred prior to May 1, 1933, which was intended to be excluded, but that such loss did not affect the express assumption of liability in paragraph II for all losses which occurred thereafter on policies and contracts which were in force and unexpired at midnight April 30, 1933. As so

interpreted, the contract was approved by the court. That interpretation was therefore fixed as the effect of the contract, regardless of what others may think its language imports.

But we agree with it independently of that opinion. We think that the proper meaning of paragraph III f, supra, is not to exclude the contract from coverage, because there was a loss prior to May 1, 1933, but only to exclude that prior loss from its operation, and thereby to add emphasis to the express terms of the coverage in paragraph II.

On the principle of that theory appellee assumed liability of the old company on the fidelity bond of the sheriff of Etowah county, for all losses covered by such bond, and which occurred on or after May 1, 1933. The loss sued on was of that sort, and was therefore covered.

It is not necessary for us, therefore, to pass upon the question treated by the Court of Appeals of the effect of the payment to appellee of the premium on the bond in question in January, 1934, and which was retained by defendant until in June, 1934, after the loss to plaintiff had occurred, when they tendered the amount of it back to the county which had paid it, but which tender was refused. But so that there may be no confusion, we wish to say that we do not think that the case of Protective Life Ins. Co. v. Cole, 230 Ala. 450, 161 So. 818, has application or superseded another line of cases as the Court of Appeals seemed to infer.

■ If a contract sets up conditions precedent to its existence as binding, and those conditions are broken at the time the contract is issued, and the price for it is paid then or thereafter, so as by its terms it does not become binding, but the fact that they are broken is then known to the parties, the effect is, by the receipt and retention of the amount of the consideration to waive them as conditions, and withdraw them from the terms of the written contract. Yorkshire Ins. Co. v. Gazis, 219 Ala. 96, 121 So. 84; Hartford Fire Ins. Co. v. Aaron, 226 Ala. 430, 147 So. 628;

Washington National Ins. Co. v. Scott, ante, p. 131, 164 So. 303.

It was said in the Gazis Case, supra, to be unimportant whether it is referred to as a waiver or an estoppel, though a waiver applies to something which has then occurred. The giving and receiving of the price of a contract, knowing at the time that by its terms it is without value or validity, has the effect of writing such terms out of the contract; otherwise a fraud would be perpetrated by luring one into a false sense of protection. Yorkshire Ins. Co. v. Gazis, supra; Washington National Ins. Co. v. Scott, supra. The case of Craft v. Standard Accident Ins. Co., 220 Ala. 6, 123 So. 271, is in harmony with that principle.

■ The amount of the premium on the bond was remitted to the Atlanta office on February 14, 1934, and to the home office on February 17, 1934. The home office in June, 1934, tendered back the amount. The agreed facts assert that they did not intend to assume liability on this bond. But such undisclosed intent, not participated in by the other party to it, is immaterial. Such other party had the right to assume that by accepting and retaining the amount of the premium appellee intended to be bound.

We understand the opinion of the Court of Appeals to mean that its finding that the plaintiff did not suffer damage was due to the interpretation which that court had placed upon the contract and its effect.

It was virtually agreed that if the contract of appellee was valid and suable by plaintiff, and covered the transaction set out in the complaint, the plaintiff had sustained damages recoverable on the contract.

We cannot agree with the opinion of the Court of Appeals, as here indicated, and for that reason the writ of certiorari is granted, and the judgment of that court is reversed, and the cause is remanded to it for final disposition.

Writ awarded. Reversed and remanded.

GARDNER, THOMAS, BOULDIN, BROWN, and KNIGHT, JJ., concur.