NATIONAL LIFE & ACCIDENT INSURANCE
COMPANY v. WILLIE RUTH CARMICHAEL.
No. 125.—381 S.W.(2d) 925.

Eastern Section. May 14, 1964.

Certiorari Denied by Supreme Court September 4, 1964.

Chambliss, Chambliss & Hodge, Chattanooga, for appellant.

Bates W. Bryan and Jack Bryan, Chattanooga, for appellee.

PARROTT, J. This suit is brought by the beneficiary of a life insurance policy to recover for the death of the insured.

On August 11, 1962, (premium receipt dated August 19, 1962), Willie Ruth Carmichael took out a mortgage term life insurance policy in the amount of $4,000.00 upon the life of her husband, Willie Clyde Carmichael. She paid Arthur Fort, an agent of the defendant insurance company, a premium of $2.23 for which she was given a receipt. The application was sent to the home office which

issued a policy on September 4, 1962, effective September 1, 1962, and forwarded the policy to its agent, Arthur Fort. Due to Willie Clyde Carmichael's occupation as a laden liner, the defendant uprated the premium ninety-one cents per month. Agent Fort received the policy on September 7th, the day before Willie Clyde Carmichael's death. He testified that he learned of Carmichael's death on September 9th or 10th and that he made arrangements to visit Willie Ruth Carmichael at the funeral home where her husband's body was being prepared for burial on September 10th. Agent Fort advised her of the additional ninety-one cents due on the premium and collected same. He explained the policy to her, filled out the proof of death forms and turned the claim in to the company. He also read the provisions of the policy, including those as to suicide, and advised her that the company would not be liable if her husband had committed suicide.

On the morning of September 8, 1962, near the noon hour, Willie Clyde Carmichael was found dead in the living room of his home. The death resulted from a shotgun wound in the left chest. There were no eye witnesses to the shooting, but Willie Ruth Carmichael and a sister of the deceased, who was non compos mentis, were present in the home. Willie Ruth Carmichael was in the bathroom at the time she heard the shot but shortly before, she had walked through the living room where her husband was sitting and he appeared normal.

The two principal issues presented in this case are: (1) Did the trial court err in deciding as a matter of law that a policy of insurance existed? (2) Did the insured commit suicide?

The insurance company contends that the insured cannot rely on the premium or conditional receipt be-

cause the same was not pleaded. We reject this theory of the insurance company because the application and premium receipt are a part of the policy and the plaintiff in her declaration brought suit on the policy. The premium receipt was placed in the record as an exhibit to plaintiff's testimony. Also, the defendant filed a copy of the premium receipt as an exhibit to his answer. We feel that this receipt, the application and the policy were before the court and they must be considered as a whole.

■■ As in the case of any other contract, the intention of the parties is fundamental in determining whether a contract existed between the parties.

The premium receipt states:

"If said deposit is at least equal to premium for one full month, insurance under terms of policy applied for shall take effect as of date of said deposit or date of medical examination (if required), whichever shall be the later, *provided* that on that date Proposed Insured, in the opinion of the Company's authorized officers in Nashville, Tennessee, was insurable and acceptable under the Company's rules and practices for the Amount, Premium and Rating Class applied for." (Emphasis ours.)

Can we construe this language to mean the insurance company intended for coverage to begin on the date the Carmichaels signed the application and gave Agent Fort the $2.23 for one month's premium? The first phrases lead one to believe the policy is effective on the date that one month's premium is paid. The second part, beginning with "provided", makes the acceptance by the company conditional upon the company's approval at their Nashville office. The usual meaning of the word "provided"

is "if" or "unless". Therefore, for the policy to be effective on the date of the application, the company would have had to issue a policy based on the same rate of premium as was paid on the date of the application. In this case the company did not accept Carmichael at the premium rate of $2.23, but did offer him a policy at a higher rate. We must hold that there was not a meeting of the minds and, therefore, no contract of insurance ever existed.

■ We think it is important to point out in this opinion that Tennessee appears to have joined that group of states which follows the rule that temporary or interim insurance may come into being on a premium receipt. In the case of American National Insurance Company v. Thompson, 44 Tenn.App. 627, 316 S.W.(2d) 52, Presiding Judge McAmis stated:

> "The Company wrote the receipt. It could have reserved the right to determine the applicant's insurability or it could have provided in plain terms that no liability was assumed unless the applicant was in good health. Having failed to do either, the applicant might well conclude that she was covered from the date of the receipt."

In the same case Judge McAmis quoted from an opinion in Gaunt v. John Hancock Mut. Life Ins. Co., 2 Cir., 160 F.(2d) 599, 601, which opinion was written by Judge Learned Hand:

> " '* * * but the application was not to be submitted to underwriters; it was to go to persons utterly unacquainted with the niceties of life insurance, who would read it colloquially. It is the understanding of such persons that counts; and not one in a hundred

would suppose that he would be covered * * only as of the date of approval. * * A man must indeed read what he signs and he is charged, if he does not; but insurers who seek to impose upon words of common speech an esoteric significance intelligible only to their craft, must bear the burden of any resulting confusion.' "

■ The insurance company, in its own interest as well as the interest of the insured, should make every effort to write its contracts so they are understandable for, as Judge Hand points out, they are not submitting the contracts to underwriters but to members of the general public not versed in the "niceties of life insurance." The understanding of the policy or contract by the insured is just as important as its being understood by the insurer.

A premium receipt such as this one is misleading and when a company uses such receipt, we are of the opinion that the only reason they would do so is to leave the impression with the insured that he was covered by the policy from the date he paid the premium. We can further see how such a premium receipt would be advantageous to the company. It offers a good selling point which no agent would fail to take advantage of and it also gives the company the use of the premium money at the earliest possible date.

The actions of Agent Fort, after he learned of the death of Carmichael, in going to the funeral home and collecting the additional premium of ninety-one cents is a further indication that even the company's own agent thought the policy was in effect and left the impression with Mrs. Carmichael that her husband might be covered by the policy.

The insurance company could just as easily use a

receipt which states that the policy becomes effective on the date of delivery if it does not intend to offer temporary or interim insurance. The only fact that takes this case out of the realm of temporary or interim insurance is the fact that there was not a meeting of the minds and that the policy issued on the application was different from the policy applied for and would be only a counteroffer by the insurance company. If the company had issued a policy based on the premium of $2.23 which Carmichael paid, we would have no hesitancy in holding the insurance effective. We have been unable to find a case where the company has been held liable when it issued a different or uprated policy on the application, but there are numerous cases in many jurisdictions holding that if the company issues the policy in accordance with the application and the applicant dies before delivery of the policy, his insurance policy became effective by the premium receipt.

There is a lengthy annotation on temporary insurance in 2 A.L.R.(2d) 943 and on page 982 the question of a counteroffer being a rejection is discussed as follows:

"In a number of instances the insurance companies, upon receiving an application, issued a policy which materially differed from the policy applied for. Legally speaking, such policy is a counteroffer which under the general rule of the law of contracts amounts to a rejection of the application."

See case of Mutual L. Ins. Co. of New York v. Young's Adm'r. (1875) 23 Wall 85, 23 L.Ed. 152.

Temporary insurance is discussed in Couch on Insurance 2d, Vol. 1, page 570, as follows:

"Usually, an application for insurance is properly

treated as an offer from the applicant to be accepted or rejected by the insurer, but by making the application blanks available to the public with the apparent purpose of putting insurance into force before the application can reach the insurer or be acted on by it, it makes the initial offer, which the applicant accepts when he fills out the application, signs it and sends it to the insurer with a remittance to cover the premium. An insurer may make a temporary contract of insurance in the form of a provisional policy, a rider attached to a policy, or a binding slip or receipt. The latter is the most frequent forms in which temporary insurance is expressed. Temporary insurance may be provided by oral or parol contracts entered into by an insurance company acting through an officer or authorized agent, although it is to be observed that the modern use of binders renders oral contracts unusual.''

In view of the foregoing, we must hold the trial judge erred in holding that the insurance policy had been issued and was effective.

Since we have held the policy of insurance did not come into existence, it is not necessary for us to go into the question of whether it was proper for the trial judge to submit to the jury the question of suicide.

The judgment of the circuit court is hereby reversed and the case dismissed with the costs in this court being taxed to the insurance company.

McAmis, P. J., and Cooper, J., concur.