ETHEL L. McLEAN v. LIFE OF VIRGINIA

No. 7111DC43

(Filed 28 April 1971)

Insurance §§ 13, 37— life insurance — issuance of rated policy — counter offer — intervening death of applicant

No contract of life insurance became effective during the life of the applicant where it was an express condition of the "Advanced Payment Receipt" that the applicant be insurable "at the premium rate applied for" if the insurance was to take effect on the date the application, including the required medical examination, was completed, the insurer, after examining the application and medical examination results, issued a rated policy calling for a premium higher than that which would have been applicable in the policy applied for, and the applicant died before the rated policy was delivered, since the issuance of the rated policy constituted a rejection of the offer contained in the application and a counter offer which could not be accepted because of the applicant's death.

APPEAL by defendant from *Morgan, District Judge,* 12 August 1970 Session of HARNETT District Court.

This is an action to recover $5,000.00 alleged to be due plaintiff as beneficiary on a contract of life insurance.

On 15 April 1968 plaintiff and her husband, Charles N. McLean, made application to the defendant for a $5,000.00 joint whole life insurance policy on the lives of plaintiff and her husband and paid a premium of $15.70 for which they received an "Advanced Payment Receipt." This receipt was on a printed form of the defendant and provided in part as follows:

"If . . . the completed application, including any medical examination required, and such other information as may be required by the Company are received by the Company at its Home Office and if the Company determines to its satisfaction that the Proposed Insured was insurable on the date the application, including any medical examination required, was completed, for the amount and at the premium rate applied for, in accordance with the Company's rules, limits and standards for the policy applied for, the insurance shall take effect, in accordance with and subject to the provisions of the policy applied for, as of the date such application, including any medical examination required, was completed. . . . If the insurance applied

for is not effective under the exact conditions specified in this receipt, the insurance shall not take effect until a policy therefor is delivered to and received by the Applicant and the first premium paid while the Proposed Insured is insurable according to the Company's rules and standards for such policy."

On 21 May 1968 a medical examination of Charles N. McLean was performed by Dr. H. D. Mabe, Jr. in Erwin, N. C. As part of this examination Charles N. McLean answered questions which the examining doctor asked him and his answers were recorded by the doctor on a printed form of the defendant which bears at the top the following printed notation:

"In continuation of and forming a part of my application for insurance to The Life Insurance Company of Virginia—Part VI—Medical History."

Charles N. McLean signed this form on 21 May 1968 on the line entitled "Signature of proposed insured." The medical examination revealed that in December, 1967, Charles N. McLean had been admitted to the hospital for three days for treatment of a peptic ulcer. On 22 May 1968 a medical examination of plaintiff was also made by Dr. Mabe. The results of both medical examinations were forwarded by Dr. Mabe to the home office of the defendant in Richmond, Virginia, where the report on Charles N. McLean was received on 22 May 1968 and the report on Mrs. McLean was received on 23 May 1968. Charles N. McLean died on 24 May 1968 of a heart attack, his death being unconnected in any manner with a peptic ulcer.

The defendant, after examining the application and the results of the medical examinations, "rated" Charles McLean "B" because of his history of a peptic ulcer within one year from the date of the application for the policy. On 28 May 1968 the defendant issued a rated policy calling for monthly premiums of $17.60, as contrasted with monthly premiums of $15.70 which would have been applicable in the policy which plaintiff and her husband had applied for. The rated policy was never delivered because of the intervening death of Charles N. McLean. The defendant tendered to plaintiff return of the $15.70 which had been paid as an advance premium, but the tender was refused and the $15.70 was paid into court.

The jury returned a verdict finding that the defendant had entered into a binding contract of insurance on the life of Charles N. McLean prior to his death. From judgment that plaintiff recover the face amount of the policy, defendant appealed.

*Bryan, Jones, Johnson, Hunter & Greene by James M. Johnson for plaintiff appellee.*

*Anderson, Nimocks & Broadfoot by Henry L. Anderson for defendant appellant.*

PARKER, Judge.

The "Advanced Payment Receipt" given by the insurance company in this case provides that the insurance shall take effect on the date the application is completed only if, among other things, the defendant insurance company determines to its satisfaction that on that date the proposed insured is insurable "at the premium rate applied for, in accordance with the Company's rules, limits and standards for the policy applied for. . . . " The receipt further expressly provides that "[i]f the insurance applied for is not effective under the exact conditions specified in this receipt, the insurance shall not take effect until a policy therefor is delivered to and received by the applicant and the first premium paid while the Proposed Insured is insurable according to the Company's rules and standards for such policy."

All of the evidence in this case indicates that the application which plaintiff and her husband made for an insurance policy to be issued at standard premium rates was not accepted by the defendant insurance company because it determined on the basis of information contained in the medical examination of Charles N. McLean, one of the proposed insureds, that he was not insurable at the premium rate applied for in accordance with its rules, limits and standards for the policy applied for. There was no evidence that in making this determination the insurance company acted unreasonably, arbitrarily, or in bad faith. There is no dispute but that the medical examination, which was made for the insurance company by the proposed insured's own personal physician, correctly revealed that the proposed insured had been hospitalized within the year for treatment of a peptic ulcer. The defendant presented uncontra-

dicted evidence in the testimony of an Assistant Manager of its Underwriting Department and from the pertinent page of its Underwriting Manual which established the rating applicable for an individual 45 years of age, as was Charles McLean, who is shown to have had peptic ulcer hospitalization within one year of the application. That the plaintiff wife, who had also previously had an ulcer, was not rated was explained by the fact that her ulcer occurred in 1963, some five years before the application, and did not require hospitalization. While there was some evidence that the defendant's local agent may have learned of Charles McLean's death a day or two after it occurred, there was evidence that the personnel in defendant's Underwriting Department learned of his death only on 3 or 4 June, some six or seven days after the rated policy was issued.

It was an express condition of the advance payment receipt that the proposed insured be insurable *at the premium rate applied for* if the insurance was to take effect on the date the application, including the required medical examination, was completed. All of the evidence shows that Charles N. McLean was not insurable at the premium rate applied for. Accordingly, this condition precedent was not complied with. The subsequent issuance of a policy calling for a higher than standard premium constituted, in effect, a rejection of the offer contained in the application and a counter offer by the insurance company. *Novellino v. Life Insurance Co. of North America,* 216 A. 2d 420 (Del. 1966). Because of Charles McLean's death, the counter offer could not be accepted by him. Thus, all of the evidence in this case established that no contract of insurance became effective during the life of Charles N. McLean. *Cheek v. Insurance Co.,* 215 N.C. 36, 1 S.E. 2d 115; *Gulf Life Insurance Company v. Bohannon,* 101 Ga. App. 58, 112 S.E. 2d 801; See Annotation, 2 A.L.R. 2d 943.

The case of *Wright v. Pilot Life Insurance Company,* 379 F. 2d 409 (4th Cir. 1967), cited and relied on by the plaintiff, is distinguishable from the case before us. In that case Wright had applied for insurance, had paid his first monthly premium, and had been given a "Conditional Receipt" which provided that by making such advance payment the insurance would be placed "immediately in full force and effect" provided he was insurable. Before any medical examination was made and before the insurance company had either approved or declined the applica-

tion, Wright was killed in an accident. The trial judge dismissed the claim. The Circuit Court reversed and remanded the case for a jury trial on the issue of Wright's insurability on the date of issuance of the conditional receipt. In the case before us a medical examination of the proposed insured was made during his lifetime and it was on the basis of the facts disclosed in this examination that it was determined that the proposed insured was not insurable at standard rates.

The language employed by the defendant insurance company in its "Advanced Payment Receipt" in the present case is, in our opinion, clear and unambiguous. Therefore, we do not find it susceptible to the interpretation, which plaintiff urges, that it provided temporary insurance until the proposed insured receives notice of its acceptance or rejection. The rule of liberal construction of insurance policies does not extend so far as to permit the courts to rewrite them.

Defendant's motions for a directed verdict and for judgment n.o.v. should have been allowed.

Reversed.

Chief Judge MALLARD and Judge GRAHAM concur.