296 So.2d 900

In re LIFE INSURANCE COMPANY OF GEORGIA, a corporation,

v.

Lana McCullers MILLER.

Ex parte Lana McCullers MILLER.

SC 379.

Supreme Court of Alabama.

March 7, 1974.

Rehearing Denied June 6, 1974.

E. L. Brobston, Lee Bains, Bessemer, for petitioner.

Spain, Gillon, Riley, Tate & Ansley and Ollie L. Blan, Jr., Birmingham, for respondent.

HEFLIN, Chief Justice.

This case is before the court on a Writ of Certiorari to the Court of Civil Appeals, 53 Ala.App. 1, 296 So.2d 896. The petition for the Writ of Certiorari was granted to review what apparently is a question

of first impression in this state—the construction to be given an up-rated policy of insurance. The Court of Civil Appeals reversed a judgment by the Circuit Court of Jefferson County, Bessemer Division, sitting without a jury, in favor of the petitioner-appellee-plaintiff Lana M. Miller for $5,000 based on a life insurance policy issued by the respondent-appellant-defendant insurance company.

Pertinent facts, which are not in dispute, from the opinion of the Court of Civil Appeals are set out below:

"The facts show that Jack L. Miller, deceased husband of the appellee, made application for an insurance policy with appellant on March 21, 1969. The policy applied for was on the life of Miller in the amount of $5,000.00. In support of the application, the first month's premium of $6.05 was paid to the agent of appellant and this amount was the standard rate for the policy issued.

"Mr. Miller was asked to take a physical examination and after missing several appointments did comply with the request.

"On May 9, 1969 a policy of insurance was issued by the appellant to Jack L. Miller for the plan and amount applied for, but at an increased premium rate, and placed in the U.S. Post Office in Atlanta, Georgia on the same date.

"The policy was received in the district office of appellant in Bessemer, Alabama, on Monday, May 12, 1969. On Sunday, May 11, 1969, Jack L. Miller was killed as a result of an automobile collision. The policy was, on May 12, 1969, returned to the home office in Atlanta because of the death of Mr. Miller.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;

"The agent for appellant who obtained the application for insurance from Mr. Miller stated that the policy received by the district office on the life of Mr. Miller was a rated-up policy and they did not have an opportunity to deliver this policy to Mr. Miller and explain to him that it was a rated-up policy and that the premium would be more than the $6.05 previously paid by him.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;

"Mr. Elmer Thomas, the chief underwriter for appellant, stated that Mr. Miller's application for insurance was investigated, and because of having been a reckless and speedy driver, his insurance was uprated by $3.50 per thousand, which is an additional amount over and above the standard rate.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;

"The evidence is undisputed that Jack L. Miller applied to an agent of appellant for a $5,000.00 life insurance policy on March 21, 1969 and on that same day paid the first month's premium for such policy in the amount of $6.05, which was the standard rate for such a policy. It is also undisputed that the appellant issued a $5,000.00 life insurance policy to Jack L. Miller but for an increased premium, i. e., $6.25; although the evidence showed the stated premium was in error and an uprating notice was mailed with the policy."

The appellee in this case asks the court to consider the text of the conditional receipt and the underwriting rule mentioned by the Court of Civil Appeals but not set out in the text of that court's opinion. The general and most often stated rule is that on certiorari, the Supreme Court will ordinarily review the courts of appeals only on questions of law and not upon the findings of fact or the application of the law to the facts except as to the facts as are stated in the opinion so that a review may be effected without an examination of the record filed in a court of appeals. E. g. Union Camp Corp. v. Blackmon, 289 Ala. 635, 270 So.2d 108 (1972); In Re Russellville Gas Co. v. Duggar, 288 Ala. 309, 260 So.2d 395 (1972).

However, there do appear to be some exceptions to these general propositions. Most important is the rule which

states that where there is no dispute about the facts, this court may go to the record for a complete understanding of questions treated in the opinion of a court of appeals. Liberty Mut. Ins. Co. v. Manasco, 271 Ala. 124, 123 So.2d 527 (1960); Southern Ry. v. Terry, 268 Ala. 510, 109 So.2d 919 (1959). The writ was granted in the instant case to review as a matter of law an issue of first impression in this state—the construction to be given an up-rated insurance policy. There is no dispute as to the facts in this case, and thus it would seem appropriate to go to the record in order to get a better understanding of what occurred below, especially since this is a case of first impression. As will be demonstrated, the issue of the construction of the up-rated policy in turn depends upon the construction of the company's underwriting rules—again a matter of law. In Cranford v. National Surety Corp., 231 Ala. 636, 166 So. 721 (1936) the court stated:

"On certiorari to the Court of Appeals, we adhere to the rule applicable to common-law certiorari, that only questions of law will be considered. But that includes the question of whether we agree with the application of the law to the facts as found and recited by that court. Reichert Milling Co. v. George, 230 Ala. 589, 162 So. 402, and cases there cited, Hood v. State, 230 Ala. 343, 162 So. 543, and we only consider the questions which were treated by the Court of Appeals.

"But when there is no dispute about the facts, we examine the record for a more complete understanding of those features of it which are treated. Fairbanks, Morse & Co. v. Dees, 220 Ala. 604, 126 So. 621; Hood v. State, 230 Ala. 343, 162 So. 543. This naturally includes pleadings, charges, and contracts which that court has interpreted in the opinion under consideration.

"That opinion does not in this case interpret pleadings, nor treat demurrers to them, nor many other matters argued in brief on this petition and set out in it. But the result reached by that court is controlled by its interpretation of a contract there referred to. It only sets out one clause of that contract, and we will refer to the record to examine it as a whole in order to consider that clause."

See also, Bennefield v. State, 281 Ala. 283, 202 So.2d 55 (1967); Johnson v. State, 277 Ala. 655, 173 So.2d 824 (1964) and cases cited therein.

■ The opinion of the Court of Civil Appeals in the instant case did interpret underwriting rules of the insurance company and the last cited cases are authority for examining the underwriting rules and related evidence in order to determine if the court properly construed them.

■ The court may not and will not enter into a redetermination of facts when those facts are set out in the opinion of the Court of Civil Appeals, but after having gone to the record for a better understanding of the facts not in dispute, it is within the scope of review for this court to determine whether the application of the law to facts was in error. Cranford v. National Surety Corp., supra. In the instant case, this court does not purport to contradict the facts as found by the Court of Civil Appeals; however, those facts will be viewed in light of this court's understanding as to the rules of construction here applicable.

■ The basis for the decision of the Court of Civil Appeals is that an application for insurance is a mere offer which does not ripen into a contract until accepted by the insurance company. If the company issues a policy materially different from that applied for, in the eyes of the law, the policy is a rejection of the offer and is a counter-offer which becomes a binding contract only when accepted by the original offeror—the would-be insured. This court recognizes that these general propositions of law are correct. See Ala-

**530**

bama Gold Life Ins. Co. v. Mayes, 61 Ala. 163 (1878); Cherokee Life Ins. Co. v. Brannum, 203 Ala. 145, 82 So. 175 (1919); United Ins. Co. v. Headrick, 275 Ala. 594, 157 So.2d 19 (1963); McLean v. Life of Virginia, 11 N.C.App. 87, 180 S.E.2d 431 (1971); Novellino v. Life Insurance Co. of North America, 216 A.2d 420 (Del. 1966); National Life & Accident Ins. Co. v. Carmichael, 53 Tenn.App. 280, 381 S.W.2d 925 (1964); Sasser v. Coastal States Life Ins. Co., 113 Ga.App. 17, 147 S.E.2d 5 (1966).

It is asserted, however, in the instant case that the action of the insurance company in up-rating the policy was unreasonable and arbitrary so that the policy should be construed as being issued at the rate applied for. This contention should be considered along with the provisions of the conditional receipt which was issued by the company at the time the application for the policy was made. This receipt provided also what is known in insurance parlance as "temporary insurance". Under the applicable facts of this case and the provisions of the conditional receipt, "temporary insurance" would commence as of the date of a required medical examination (April 29, 1969), provided the conditions of the receipt were satisfied. The language of the receipt provided that if the company, after investigation and medical examination, is satisfied under its rules and practices that at the time of the medical examination the applicant was insurable for and was also eligible for insurance on the plan and for the amount and at the premium rate applied for, then the coverage would be in effect from the date of the medical examination, provided further, that the insurance company approved said application.

The fact that the company issued a policy for the plan and for the amount applied for following the medical examination is rather conclusive evidence that the insured was insurable and eligible for the plan and for the amount applied for and that the insurance company approved the application. Thus the only real issue involved is wheth-

er or not the trial court erred in finding that the applicant was insurable at the premium rate applied for.

It is clear that the only reason for up-rating the premium grew out of a notation in a retail credit report that the deceased had the reputation of being a reckless and speedy driver. The plaintiff contends that the rules of the company were not followed but that the up-rating of the premium was the result of arbitrary decision on the part of the insurance company's underwriter since the underwriter admitted that the insurance company had no information or knowledge that the deceased had been in any accidents or had been guilty of any moving violations.

The company's underwriter testified that the decision to up-rate the premium was in accordance with the company's underwriting rules. These rules obviously were prepared by the insurance company and the insured had no knowledge of the contents of such rules when he made application for the insurance. In construing these underwriting rules the Court of Civil Appeals stated as follows:

> "Appellant [sic] [appellee] contends that the rules followed by the underwriter in up-rating Mr. Miller's policy do not authorize such a determination and that the rules in question are mandatory and must be followed. However, the underwriter testified that the rules were a mere guideline to be used in approving or disapproving applications for insurance. We agree with the underwriter. We believe that the language used in the so-called rule is much more conducive to an interpretation that is a mere guideline rather than a strict rule of policy that must be followed to the letter."

■ The underwriter testified that the insured's driving reputation as contained in the retail credit report made the following rule applicable to him:

> "Moderate Criticism—Those with two or more moving violations or one or more

accidents being the applicant's fault, and speeding in a fast and reckless manner will be considered at a rating of $3.50 with no benefits. ($3.50–5–3 for the Family Plan)."

The law of this state with regard to construction of insurance policies is clear and well-settled. An insurance contract will be construed most strongly against the party who framed it in case of death. Life & Casualty Ins. Co. v. Whitehurst, 226 Ala. 687, 148 So. 164 (1933); United States Fire Ins. Co. v. McCormick, 286 Ala. 531, 243 So.2d 367 (1970). The contract of insurance will be construed strictly against the insurer and liberally in favor of the insured. E. g. Mutual Life Ins. Co. of New York v. Lovejoy, 201 Ala. 337, 78 So. 299 (1918); Southern Ins. Co. v. Wilson, 214 Ala. 373, 108 So. 5 (1926). Ambiguous provisions of an insurance policy will be construed most strongly against the insurer and in favor of the insured. E. g., National Life & Accident Ins. Co. v. Lokey, 166 Ala. 174, 52 So. 45 (1910); New York Life Ins. Co. v. Torrance, 224 Ala. 614, 141 So. 547 (1932)). These same principles should be employed in construing other documents prepared and used by the company affecting the policy of insurance. The trial court, apparently following these rules of construction, found for the plaintiff. Accordingly, the underwriting rule should have been examined by the Court of Civil Appeals in light of these well-settled rules of construction and the usual presumptions supporting the decision of the trial court. The Court of Civil Appeals erred in not so doing.

◼ Viewed in this light, the applicable underwriting rule, which admittedly was the basis for the underwriter's decision to up-rate the deceased's policy should have been construed most strongly against the insurer and in favor of the deceased. Such a construction would have meant that the premium could have been up-rated for an applicant with two or more moving violations, or one or more accidents where the applicant is at fault, *and,* in addition to either of these two, a reputation for speeding in a fast and reckless manner. It is apparent that this was the construction employed by the trial court.

In addition to the underwriting rules pertaining to motor vehicle driving the insurance company, through its underwriter, attempted to prove the practice of the company in the past in connection with moderate criticism of motor vehicle driving. This was done by placing in evidence two files which the insurance company contended illustrated its practice under the applicable underwriting rule to up-rate policies under a construction which would read the conjunctive "and," emphasized above, as being the disjunctive "or". In both cases the applicant's report did have criticisms of his driving reputation. But in one case the applicant's report contained this entry: "Past MVR indicates violation of speed on 6–16–66, 7–12–66, cancellation of chauffeur's license, 8–16–66 speeding ticket." The other credit report contained this annotation in addition to the criticism: "Files show that he has had some accident in the past. Had loss in 5–64 when he hit another auto head on. This totaled his auto." Thus it would appear that despite protestations to the contrary, the files of these cases demonstrate that even the company itself construed the standards of the underwriting rule as being conjunctive so that before a policy would be up-rated there would be criticism and moving violations or criticisms and a previous accident.

◼ In the case at hand there was only criticism of the deceased's driving reputation and no indication that he ever had a moving violation or an accident. Since the company's action in up-rating the policy was not justified either by the underwriting rule as construed by this court, or, indeed, as apparently construed by the company itself, the up-rating decision was clearly an arbitrary one and the policy must be read as being made without taking the arbitrary act of the underwriter into

account. See McLean v. Life of Virginia, supra, where the court held that because "[t]here was no evidence that in making this determination [to up-rate a premium] the insurance company acted unreasonably, arbitrarily, or in bad faith," the up-rated policy issued was not an acceptance but a counter offer. Thus where the decision to up-rate was unreasonable and arbitrary, it follows that the court will disregard it in construing the policy. Cf. Western & Southern Life Ins. Co. v. Vale, 213 Ind. 601, 12 N.E.2d 350 (1938) (industrial policy application rejected after injury; *held,* rejection on the grounds that insured coal miner probably could not make payments was arbitrary and therefore not effective); United Founders Life Ins. Co. v. Carey, 363 S.W.2d 236 (Tex.1963) (insurer's officers could not defeat right to temporary insurance by arbitrarily refusing to proceed to form an opinion as to applicant's insurability after applicant's death).

The court wants to make clear that while the conditional receipt is important because of its language in spelling out the conditions under which the company agreed to provide coverage, the concept of "temporary insurance" was not discussed in the opinion of the Court of Civil Appeals and thus is not properly before this court. It is possible to conclude from the record in this case that the concept of "temporary insurance" was not litigated in the trial court. The court points this out only because there is a conflict of authority as to the proper treatment of a conditional receipt under facts like those which exist in the instant case. In one line of cases the conditions in the receipt are viewed as conditions precedent so that no coverage exists until all the conditions are met, and in the other line of cases the conditions are deemed conditions subsequent so that coverage is in effect from the date of application or medical examination, whichever is applicable, subject to termination if the risk is rejected by the company. This court does not want this case to be seen as adopting either position since, although all the necessary elements for such a determination appear to be present, the Court of Civil Appeals didn't address itself to this issue. For a discussion of the various views on this issue see, Service v. Pyramid Life Ins. Co., 201 Kan. 196, 440 P.2d 944 (1968) (condition subsequent); Adolf v. Union Nat. Life Ins., 170 Neb. 38, 101 N. W.2d 504 (1960) (condition precedent); Annotation, 2 A.L.R.2d 943, 964–68 (1948); G. Couch, Cyclopedia of Insurance Law, §§ 14:41 (no coverage), 14:42 (coverage pending acceptance or rejection) (1959).

In summary, this court now holds that the Court of Civil Appeals committed reversible error in not construing the underwriting rule most strongly against the insurer. When so construed, it becomes clear that the act of up-rating the premium was arbitrary and unreasonable, and when an insurer solicits an application from a customer, receives the first premium, determines that the customer is insurable from a medical standpoint and issues a policy insuring the customer, the trial court was within its discretion to disregard an unreasonable and arbitrary act of up-rating the premium on the part of the insurer and consider the policy an acceptance of the offer as made by the application.

Reversed and remanded.

MERRILL, MADDOX, McCALL FAULKNER and JONES, JJ., concur.

COLEMAN, HARWOOD and BLOODWORTH, JJ., dissent.

BLOODWORTH, Justice (dissenting).

I most respectfully dissent. I would affirm the decision of the Court of Civil Appeals.

COLEMAN and HARWOOD, JJ., concur in the dissent.