We granted the writ of certiorari in this case to review the reversal by the Court of Civil Appeals, 417 So.2d 186, of a summary judgment entered by the Circuit Court of Lauderdale County against twenty-eight City of Florence police officers, who had appealed de novo to the circuit court their dismissal by the Civil Service Board of the City of Florence on charges filed against them by the Chief of Police of the City of Florence.
The Court of Civil Appeals determined that there were no genuine issues of material fact to prevent summary judgment as to: "(1) whether the policemen committed acts justifying adverse personnel action; (2) whether the terminations were motivated by a desire to suppress the policemen's First Amendment right of association with a union; and (3) whether the policemen were afforded procedural due process." However, the Court of Civil Appeals reversed summary judgment on the basis that the issue of punishment was a question for the jury, even though holding that the undisputed facts justified disciplinary action as a matter of law.
On certiorari, we are concerned only with whether the Court of Civil Appeals erred in reversing summary judgment on the issue of punishment. Although the briefs of the twenty-eight policemen address other issues decided below, those issues are not properly before this court.
Before addressing whether the issue of punishment precluded summary judgment against the police officers, we look to the underlying facts and progression of this case summarized by the Court of Civil Appeals, as follows:
 "As stated above, this appeal arises out of the dismissal of twenty-eight policemen. Those twenty-eight policemen, and six others, went on strike on December 5, 1979. On December 7, the chief issued written orders for the strikers to return to work. The orders stated that the policemen would be suspended if they did not `return to work at 7:00 o'clock a.m., CST, Monday, December 10, 1979.'
 "On December 10 at 2:00 P.M., strike representatives met with other union representatives and city officials and the deadline for returning to work was extended until 11:00 P.M. on the 10th. Six strikers returned to work before the extended deadline expired; they were not punished.
 "On December 11, the chief mailed termination letters to the remaining strikers. On December 18, the chief, pursuant to the rules and regulations of the Florence Civil Service Board, filed six formal charges against each striker. An evidentiary hearing was held on January 28; all of the striking policemen were present or represented at the January 28th hearing. The Civil Service Board affirmed the termination on January 29.
 "Pursuant to Act No. 1619, Acts of Alabama 1971, the policemen appealed to the Lauderdale County Circuit Court for *Page 193 
a jury trial de novo on February 8. Attached to the notices of appeal were copies of the board's decision in each case. The city filed a motion to dismiss, which was later denied. The city then filed a motion for summary judgment and attached the affidavits of the police chief and the city commissioner in charge of the police department. A transcript of the board's hearing was also attached. In response to the motion, the policemen offered the affidavit of Sergeant John Baugh. The circuit judge, based on the evidence before him, found that there was no material fact at issue and granted the city's motion for summary judgment."
The rationale employed by the Court of Civil Appeals in its determination that summary judgment was improper, was stated as follows:
 "Act No. 1619 provides for an appeal from the Civil Service Board's action by trial de novo in the circuit court. The Act further provides for trial by jury on demand. A trial de novo is a new trial in which the whole case is gone into as if no prior proceedings had occurred. Alabama Equity Corp. v. Hall, 46 Ala. App. 143, 239 So.2d 215, cert. denied, 286 Ala. 731, 239 So.2d 220 (1970). It is clear that the Civil Service Board on appeal may substitute its judgment regarding punishment for that of the police chief. Rules and Regulations of the Civil Service Board of Florence, Alabama, Chapter IV, § 3. Because Act No. 1619 provides for a trial de novo
wherein a jury may consider the entire case a jury may determine the question of appropriate punishment, if properly raised, and substitute its judgment on that question for that of the Civil Service Board. Smith v. Civil Service Board of the City of Florence, supra [52 Ala. App. 44, 289 So.2d 614 (1974)].
". . . .
 "Where a party appeals pursuant to Act No. 1619 and demands a jury, such as we have in this instance, the question of punishment is a question for the jury. For the reasons stated above, we find that the trial judge erred in granting the board's motion for summary judgment on this ground."
The implied reference to the police chief's discretion to determine punishment, and the direct reference to the Civil Service Board's authority to substitute its judgment of appropriate punishment for that of the police chief, are more fully understood in light of an earlier passage in the opinion, which reads:
 ". . . The Manual of Rules and Regulations of the Police Department of the City of Florence provides, inter alia, that members of the department are subject to disciplinary action for absence from duty without leave or authorized permission and for failure to comply with oral or written orders. Manual, supra, § 3.35.13.33; § 3.37.11. The Manual
also provides that members who are found guilty of violating a rule, regulation or order `shall be subject to reprimand, suspension, dismissal, or suffer such other disciplinary action as the Chief of Police may impose.' Manual, supra, § 3.35.13.
 "The Rules and Regulations of the Civil Service Board of Florence, Alabama provide, inter alia, that when `the head of any department or office suspends, removes, discharges or demotes any employee,' the employee may appeal to the board. Rules and Regulations, supra, Chapter IV, § 1. If the board finds the employee guilty of the charges, the employee `shall be subject to reprimand, suspension, discharge or suffer such other lawful punishment as the Civil Service Board may direct.' Id. Chapter IV, § 3.
 ". . . The policemen's actions clearly made them subject to discipline and both the chief of police and the board had the authority to dismiss them."
It is axiomatic that administrative rules and regulations must be consistent with the constitutional or statutory authority by which their promulgation is authorized. See C. Sands, Sutherland Statutory Construction § 31.02 (4th ed. 1973), "A regulation . . . which operates to create a rule out of harmony with the statute, is a mere *Page 194 
nullity." Lynch v. Tilden Produce Co., 265 U.S. 315,44 S.Ct. 488, 68 L.Ed. 1034 (1924). This is because an administrative board or agency is purely a creature of the legislature, and has only those powers conferred upon it by its creator.Woodruff v. Beeland, 220 Ala. 652, 127 So. 235 (1930).
The rules and regulations of the Police Department and the Civil Service Board, referred to supra, granting discretionary disciplinary authority to the Chief of Police and Civil Service Board respectively, must be examined in light of Act No. 437, Acts of Alabama 1947, the legislation which created the Civil Service Board of the City of Florence and placed the Police Department, among others, under its authority. The pertinent provisions of Act No. 437 read:
 "1. Police and Fire Departments under civil service: The Board of Commissioners of the City of Florence is authorized and empowered at any time subsequent to the enactment of this statute to put into force and effect an ordinance or ordinances governing the Police and Fire Departments of said City as provided in the act; but this act shall have no effect excepting as an authority for the City of Florence to take such action. The Police Department and the Fire Department and all officers and members of said Departments, in Florence, Alabama, including the chiefs of said Departments, shall be governed by civil service regulations under the direction and supervision of a board as hereinafter provided, and all persons who may hereafter be elected or appointed as officers or members of such Departments, or either of them, or who may hereafter be employed in either of said Departments as members thereof, shall thereafter remain and continue in their respective employments of said City during good behavior, efficiency and obedience to such reasonable rules and regulations as may, from time to time, be prescribed by the civil service board, which is herein provided for, and as is hereafter provided. Nothing herein contained shall be construed to prevent or preclude the removal of any officer or member of either of said Departments by the civil service board in the manner hereafter prescribed.
". . . .
 "4. Board to make rules and regulations: The civil service board shall make rules and regulations to carry out the purpose of this article, and for examinations, appointments and removals in accordance with its provisions and the board may, from time to time, make changes in the existing rules. . . . The chief of the Police Department and the chief of the Fire Department shall have authority in their respective Departments to demote any member of the respective Departments by and with the consent and approval of the civil service board, provided however, that upon written demand filed with the civil service board within five days from the date of the order of demotion the person whom it is proposed to demote shall be given a public hearing by the civil service board before any order of demotion shall be final. The chief of the Police Department and the chief of the Fire Department shall have authority to suspend any member of their respective Departments pending the hearing by the civil service board. . . .
". . . .
 "14. Violations: Any person in the service of the City by appointment under civil service rules who shall wilfully, or through culpable negligence, violate any of the provisions of this article, and who shall be found guilty after a trial before the civil service board shall be dismissed from the service of the City, and shall not be subject to reappointment for two years. . . ." (Emphasis added.)
Of acute significance is the mandatory language of Section 14 which declares that any city employee governed by civil service rules "shall be dismissed" for a willful or culpably negligentviolation of the provisions of the article. (It is quite apparent that the phrase "this article" is used synonymously with "this act" throughout Act No. 437.) *Page 195 
The provisions of the act subject to violation include, as stated in Section 1, "good behavior, efficiency, and obedience to such reasonable rules and regulations as may, from time to time, be prescribed by the civil service board."
Consequently, when an individual governed by the act is found to have violated these rules and regulations "willfully or through culpable negligence," the mandatory punishment is dismissal from service with the city. To the extent that the rules and regulations in question purport to grant to the chief of police and Civil Service Board the discretionary authority to impose various types or degrees of punishment, those rules and regulations are void as in conflict with the provisions of Act No. 437, where it is found that the violation supporting disciplinary action was committed willfully or through culpable negligence.
This is not to say, however, that the chief of police and civil service board do not have discretionary power to determine appropriate punishment where there is a simple finding of a rules infraction, unaccompanied by a finding that the violation occurred willfully or through culpable negligence.
We note, nevertheless, that whatever discretionary powers of punishment the chief of police may possess, they do not include the authority to dismiss a police officer governed by the act. Such an individual may be dismissed from city service only when he or she has been "found guilty after a trial before the civil service board."
The last sentence of Section 1 states: "Nothing herein contained shall be construed to prevent or preclude the removal of any officer . . . by the Civil Service Board in the manner hereinafter prescribed." The first sentence of Section 4 provides the board with authority to "make rules and regulations to carry out the purpose of this article, and for . . . removals in accordance with its provisions. . . ." It is fundamental that procedures by which disciplinary sanctions are imposed must comport with statutory requirements. C. Rhyne, TheLaw of Local Government Operations, § 13.14 (1980).
The remaining question is whether the twenty-eight police officers were dismissed for violations committed willfully or through culpable negligence. Regarding the actions of the police officers which gave rise to disciplinary measures against them, the Court of Civil Appeals found:
 "It is undisputed that thirty-four policemen went on strike and were therefore absent without leave, which is a violation of the rules and regulations of the police department. It is also undisputed that twenty-eight policemen failed to return to work when ordered to do so by the chief of police, which is also a violation of the department's rules and regulations. . . ."
The Court of Appeals did not specifically address the question of whether the violations were committed willfully or through culpable negligence. However, because the evidence concerning the infractions is undisputed, we may examine the record for purposes of clarification and resolve that question.
In Life Insurance Company of Georgia v. Miller, 292 Ala. 525,296 So.2d 900 (1974), this court observed:
 ". . . The Supreme Court will ordinarily review the courts of appeals only on questions of law and not upon the findings of fact or the application of the law to the facts except as to the facts as are stated in the opinion so that a review may be effected without an examination of the record filed in a court of appeals. E.g. Union Camp Corp. v. Blackmon, 289 Ala. 635, 270 So.2d 108 (1972); In Re Russellville Gas Co. v. Duggar, 288 Ala. 309, 260 So.2d 395
(1972).
 "However, there do appear to be some exceptions to these general propositions. Most important is the rule which states that where there is no dispute about the facts, this court may go to the record for a complete understanding of questions treated in the opinion of a court of appeals. Liberty Mut. Ins. Co. v. Manasco, 271 Ala. 124, 123 So.2d 527 (1960); *Page 196 Southern Ry. v. Terry, 268 Ala. 510, 109 So.2d 919 (1959). . . ."
Concomitantly with its summary judgment, the trial court issued an outstanding memorandum opinion, which has been very helpful to our understanding and resolution of the issues presented. Excerpting from that memorandum opinion, we note the following findings of fact by the trial court, amplifying those of the appellate court:
 "It is clear from the evidence before the Court that all of the plaintiffs knew they were subject to dismissal by the Chief of Police for failure to obey his order to return to work, and from being absent from duty without permission. . . . The undisputed facts support the conclusion that the plaintiffs, through their representatives at the meeting held in the auditorium of City Hall on December 10 [with union and city officials], and their possession of the Police Department manual, were fully informed of the consequence of their remaining out on strike against the city, and had full opportunity to discuss the implications of their conduct with the City Administrators prior to further action being taken against them. Indeed, as mentioned above, as a result of the memorandum of the Chief of Police, set out above, and the meeting held on April [sic, December] 10, six of the striking employees returned to work and were not discharged. At the meeting, Sgt. Baugh was asked whether or not he and the other officers would come back to work before the extended deadline, and they said `No'. It is undisputed that each of the plaintiffs ignored Chief Bailey's order to return to work, and remained on strike."
It is clear from the undisputed evidence that the police officers' absence from work was, at some point, due to theirwillful refusal to return to work after being ordered to do so. By willfully refusing to return to work, each officer subjected himself to mandatory dismissal under Act 437.
With dismissal expressly required by the act, there was no issue of punishment to be considered by the civil service board, nor by the jury on de novo appeal to circuit court. Accordingly, the trial court correctly entered summary judgment because there was no genuine issue as to any material fact for the jury's determination. Campbell v. Alabama Power Co.,378 So.2d 718 (Ala. 1979).
We wish to emphasize that our decision does not hinge on a reevaluation of the Court of Civil Appeals' findings of fact, but rather on a review of its application of law to the undisputed facts. As this court said in Life Insurance Companyof Georgia v. Miller, supra:
 "The court may not and will not enter into a redetermination of facts when those facts are set out in the opinion of the Court of Civil Appeals, but after having gone to the record for a better understanding of the facts not in dispute, it is within the scope of review for this court to determine whether the application of the law to facts was in error. . . ."
For the foregoing reasons, the decision of the Court of Civil Appeals is reversed and that court is hereby directed to enter its judgment consistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, JONES, SHORES, BEATTY and ADAMS, JJ., concur.
MADDOX and ALMON, JJ., not sitting.