JONES, Justice.
Plaintiffs’ appeal challenges an adverse judgment declaring that they had breached an existing contract with Defendants relating to Plaintiffs’ operation of a public park located on lands owned by Defendants and devoted to park purposes.
Wayne and Syble Allen, husband and wife, filed suit against Marshall County and the Public Park and Recreation Board of Marshall County, alleging that on July 15,1981, the Allens and the County entered into an agreement for the operation of the park; that a justiciable controversy had arisen between the parties; and that the Defendants claim that the contract was not binding on them because its execution by the chairman for the Marshall County Commission had not been formally authorized. The complaint alleged that the agreement was binding on the Defendants; if there was any defect in its execution, it had been ratified; and, further, that the Defendants were estopped from denying the validity and binding effect of the agreement.
The Defendants filed an answer denying the complaint’s material allegations and asserting that, if it had been valid in the first place, the agreement had been breached by the Allens and was now void at Defendant’s election, and should be cancelled by the Court.
After a nonjury trial, the court entered a judgment declaring that the Allens and the County “by their actions and conduct did, in fact, create the lease which the Plaintiffs [the Allens] contend is in full force and effect,” and that the parties had acted “in all respects toward each other as if said lease did exist.” The court further ruled that “before the new commission assumed office, in January, 1983, ... the lease had become binding upon the parties and defined the rights of the parties.” The judgment recited that, after some meetings and discussions in 1983, the Allens had paid the County $3800 in back rent.
The judgment proceeded to declare that the Allens: Breached the agreement in failing to pay interest on the $3800; failed to provide insurance; failed to replace and repair certain items of equipment as required by the lease; and “attempted to persuade the Marshall County Commission to confer upon them benefits in violation of Article 4, Section 63, and Amendment 112 of the Alabama Constitution. ”
The judgment declared that the Marshall County Commission could enter upon its minutes a repudiation of the lease and that if it failed to do so “forthwith” it would be deemed to have elected for the lease to continue in force.
The issues presented do not include a challenge to the trial court’s finding with respect to the validity of the contract or its binding effect upon all parties. The issue relates solely to the propriety vel non of the trial court’s separate and several holdings that Plaintiffs breached the contract and thus authorized the Defendants’ repudiation of the lease agreement. Our careful review of the record discloses that only one of the “breaches” — Plaintiffs’ failure to have insurance during their operation of the park from July through September 1981 — was raised by either the pleadings or the proof as a triable issue below: Whether the trial court erred in holding that the Allens breached the lease in failing to have insurance for the period July-September 1981.
The material facts surrounding the insurance issue are without substantial dispute: The park consisted of 165 acres of “TVA land” on which there were four pavilions, a house for a park office, a snack bar, bathroom facilities, and some rides for children. The park had not been in operation for several years before 1981, when it was leased to the Allens.
Paragraph 19 of the lease provides: “Lessees shall at Lessees’ sole cost and expense, throughout the term of this contract, maintain in full force and effect a policy of general public liability insurance with the Marshall County Commission included as a named insured.”
Shortly after the Allens signed the lease, they took possession of the property and began to clean up and operate the park. *568 They opened the park to the public on July 17, 1981, and began paying the County the $200 per month rental charge as provided by the lease. Also, the county commission began doing the work it had agreed to do. Although certain of the items of work, repair, and improvements were done by the County at that time, sometime in September 1981 Mr. Allen met with two of thé commissioners and told them that they had not repaired the park in accordance with the agreement and that he was going to withhold the rent to get them to honor their commitment. The Allens withheld payment of the rent until April 1983.
The new commission took office in January 1983, and in April 1983 it agreed with the Allens that if they would pay the back rent, in the amount of $3800, the County would review the list of items to be repaired, make a determination of what work it felt should be done, and then make those repairs. The Allens gave the County a check for $3800 and accompanied the members of the commission and one member of its staff to the park that same day. Thereafter, substantial work on the park was performed by the County and the Allens have been operating the park and making their $200 per month rental payment, up to and including the date of the trial below. The County has never offered to refund any portion of the rental payments or to make any restitution for other funds expended on the park by the Allens.
With this factual overview in mind, we now direct our attention to the specific details relating to the Allens’ obligation to obtain liability insurance coverage on the public park operation. At the time the Allens went into possession and opened the park to the public, their application for insurance had not been approved. The day the lease was signed, Mr. Allen told two of the commissioners that they did not have insurance and did not know how long it would take for their application to be approved. One of the commissioners, in the presence of the other, told Mr. Allen, “That’s fine, go ahead and get insurance as quick as you can.” They had difficulty obtaining the insurance and kept the commission informed of that fact. The park was closed in September 1981 and remained closed until April 1982. In January 1982 the Allens were able to secure insurance, which became effective upon the reopening of the park in April for the 1982 season.
During the period from July 1981 until January 1982, when the Allens did not have insurance, they were in possession of the park and paying the County $200 a month. Their right to possession of the park was never challenged, and the County did not refund any of the rental payments. Following the payment of $3800 in April 1983, the Allens resumed paying the County $200 a month; they have paid that amount every month since, and they have kept the insurance coverage in effect continually since it became effective in April 1982.
These undisputed facts call forth both legal and equitable doctrines, each vying for priority of application. Two such doctrines are: 1) Waiver of contract provisions requiring insurance coverage. Medical Clinic Board v. Smelley, 408 So.2d 1203 (Ala.1981); Bonie v. Griffin, 252 Ala. 299, 40 So.2d 870 (1949); Washington National Insurance Co. v. Scott, 231 Ala. 131, 164 So. 303 (1935); Cranford v. National Surety Corp., 231 Ala. 636, 166 So. 721 (1936); and Danforth & Armstrong v. Tennessee & Coosa Railroad Co., 93 Ala. 614, 11 So. 60 (1890). 2) Waiver of the breach of a contract provision requiring insurance. Cole v. Racetrac Petroleum, Inc., 466 So.2d 93 (Ala.1985); Jeff D. Jordan & Co. v. Yancey & Abernathy, 242 Ala. 385, 6 So.2d 473 (1942); Penney v. Burns, 226 Ala. 273, 146 So. 611 (1933); McAnelly Hardware Co. v. Bemis Bros. Bag Co., 208 Ala. 394, 94 So. 567 (1922); and Andrews, Allen & Morefield v. Tucker, 127 Ala. 602, 29 So. 34 (1900).
As the cited cases indicate, these two principles are founded on essentially the same rationale: One’s conduct inconsistent with enforcement of a contract provision *569 will prevent its enforcement. The concept of waiver is common to both.
There is yet another applicable principle — the principle of ratification. Indeed, so extreme are these facts precluding the County’s right to declare a forfeiture, that it can be conclusively stated that the events of April 1983 totally subsume past relationships between the Allens and the County.
When the “new” commission took office in January 1983, the Allens were 15 months behind with the rental payments and had ceased to operate the park at the close of the 1982 season, all because the County had not carried out its work and repair obligations under the contract. Through renegotiations, concluding in April 1983, the parties reached an agreement whereby the Allens would pay all back rental payments (19 months) and the County would perform certain agreed upon work, repair, and maintenance upon the park site. Both parties set about performing their respective obligations under the renewed agreement. The Allens went back into possession upon payment of all back rent and have operated the public park continuously up to and including the date of the trial. (Whether the Allens have continued in possession and are operating the park at the present time is not disclosed by the record.) The insurance coverage required by the contract has been in effect continuously since April 1982.
The application of the most basic contract principles forces us to conclude that the trial court erred in declaring that the Allens’ failure to obtain insurance for the 1981 season voided the contract and vested the County with the right to declare a forfeiture. Accordingly, the judgment appealed from is reversed, and this cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and SHORES, BEATTY and ADAMS, JJ., concur.