Mrs. Net V. TYLER, Administratrix of
the Estate of Cecil H. Tyler, Deceased,
Plaintiff-Appellant,

v.

INSURANCE COMPANY OF NORTH
AMERICA, INC., Defendant-Appellee.

No. 74–3655
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Oct.1, 1975.

Roscoe B. Hogan, Birmingham, Ala.,
for plaintiff-appellant.

Robert D. Norman, Marshall H.
Fitzpatrick, Birmingham, Ala., for defendant-appellee.

Before BROWN, Chief Judge, and
GODBOLD and GEE, Circuit Judges.

JOHN R. BROWN, Chief Judge:

While preparing to launch a fishing boat then on a boat trailer hitched to an automobile, the Insured, Cecil Tyler, was severely injured and subsequently died. His widow brought suit for $50,000.00 under an accident policy covering death or injury from certain vehicular-related accidents.[1] On the basis of the pleadings and a deposition by Tyler's son-in-law, who was present at the scene of the accident, the District Court granted insurer's motion for summary judgment.

Because Alabama law is uncertain in regard to the interpretation of several vital phrases in the policy, we once again[2] make use of the valuable tool

---

\* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

1. . . . the company insures [the insured] . . . against loss of life . . . resulting . . . from bodily injuries . . . caused by accident occurring while this policy is in force and *arising out of* the following specific hazards:

 (c) driving . . . or riding in or on, boarding or *alighting* from

(1) any pleasure type automobile . . . or

 (d) being *struck* by any automobile, truck or public conveyance.

2. Our first reported case certifying questions to the Alabama Supreme Court was *Barnes v. Atlantic & Pacific Life Insurance Co.,* 5 Cir., 1975, 514 F.2d 704. In addition to previous cases certified to the Supreme Court of Florida, see *Barnes, supra,* at 705 n. 2, we have used the certification procedure in *H. S. Equi-*

provided by the certification provision of the Alabama constitution. Alabama Constitution Art. VI, Section 140(b)(3). Through certification we can have answers from the Court which under *Erie* has the last word, rather than depending on our own possibly erroneous extrapolation of Alabama contract law.

Following our usual practice counsel after commendable collaboration submitted their agreed fact statement and questions to be certified.[3] The well-drawn proposal of counsel narrows the issues to be presented to the Alabama Supreme Court to a determination of Alabama law concerning the meaning of the terms *alighting from* and *struck* as used in the Tyler policy.

The Insurer argues that the accident did not "arise out of" any of the hazards covered by the policy.[4] First the Insurer claims that the Insured was not alighting from an automobile because he had already "completed all acts normally performed by persons getting out and away from the automobile under similar circumstances." The Insured, however, argues that there was sufficient continuity of action between Tyler's getting out and stepping to the rear of the car and the accident because the launching of the boat was part of the "normal acts" to be performed in preparation for the fishing trip. Finding no Alabama case on point regarding the interpretation of "alighting from", the District Court looked for guidance to cases in other jurisdictions [5] and determined the approach the Alabama courts "likely would adopt." This prediction of Alabama law favored the Insurer.

Second the Insurer argues that the Insured was not "struck" by an automobile when a rope attached to the boat which was still on a trailer behind the auto, caught his foot causing him to be dragged behind the car as the driver pulled the car into the parking space. Insurer admits that there are no Alabama cases directly on point and that there is a split of authority as to whether a policy of this type requires that the Insured be struck by the auto itself or only by "some instrumentality put into motion by an automobile".[6] The Insured contends that Tyler was struck by the rope and that the policy does not require that the Insured have physical contact with the car. The District Court again found no persuasive Alabama authority on whether actual contact with the car is required, but the Court did not find that determination necessary because it held that there was no "striking" here at all, for there was no "sudden or forceable contact" with the Insured.

ties, Inc. v. Hartford Accident & Indemnity Co., 5 Cir., 1975, 512 F.2d 1277 and *Nardone v. Reynolds,* 5 Cir., 1975, 508 F.2d 660. See also *United States v. Buras,* 5 Cir., 1972, 475 F.2d 1370 (Brown, C. J., dissenting), *cert. denied,* 1973, 414 U.S. 865, 94 S.Ct. 129, 38 L.Ed.2d 117.

3. We have indicated by appropriate footnotes where the parties differed and have either made the choices or left them to the Supreme Court of Alabama.

4. The District Court found that under Alabama law the language "arising out of" has been construed narrowly. The Court cited particularly *American Liberty Insurance Co. v. Soules,* 1972, 288 Ala. 163, 258 So.2d 872, 876 which said that the injury must be connected with the inherent use of the auto as a vehicle.

5. *Ross v. Protective Indemnity Co.,* 1948, 135 Conn. 150, 62 A.2d 340, 341; *St. Paul-Mercury Indemnity Co. v. Broyles,* 1957, 230 Miss. 45, 92 So.2d 252.

6. Annot., 33 A.L.R.3d 962 (1970). The majority approach requires only that the Insured be struck by something set in sudden motion by the force of the automobile. *Gilbert v. Life & Casualty Co.,* 1932, 185 Ark. 256, 46 S.W.2d 807; *McKay v. Travelers Indemnity Co.,* Ohio App.1963, 27 Ohio Op.2d 76, 193 N.E.2d 431. The minority approach requires direct contact between the Insured and the vehicle. *Metropolitan Casualty Ins. Co. v. Curry,* 1945, 156 Fla. 502, 24 So.2d 316; *Bowab v. St. Paul Fire & Marine Insurance Co.,* La.App., 1963, 152 So.2d 66. The Insurer claims that *Lingo v. Gulf Life Insurance Co.,* 32 Ala.App. 525, 27 So.2d 697, *cert. denied,* 1946, 248 Ala. 367, 27 So.2d 700, indicates that Alabama might follow the minority approach. The Insured, however, contends that *Life Insurance Co. of Georgia v. Miller,* 1974, 292 Ala. 525, 296 So.2d 900 suggests that Alabama may accept the majority rule.

## QUESTIONS CERTIFIED

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF ALABAMA, PURSUANT TO ALABAMA CONSTITUTION ARTICLE 6, SECTION 140(b)(3).

TO THE SUPREME COURT OF ALABAMA AND THE HONORABLE JUSTICES THEREOF:

It appears to the United States Court of Appeals for the Fifth Circuit that the above styled case in this Court involves a question or proposition of the law of the State of Alabama which is determinative of the cause, and there appear to be no clear, controlling precedents in the decisions of the Supreme Court of Alabama. This Court certifies the following questions of law to the Supreme Court of Alabama for instructions concerning said questions of law, based on the facts recited therein, pursuant to Alabama Constitution Article 6, Section 140(b)(3); such case being an appeal from the United States District Court for the Northern District of Alabama.

## STATEMENT OF FACTS

Early on the morning of June 18, 1973, 79 year old Cecil H. Tyler and his son-in-law, Mr. Lutz, embarked on a fishing trip to the Holt Lock and Dam near Tuscaloosa. They went in Mr. Lutz's car, to which was attached a boat trailer, which carried a 17½ foot, flat-bottomed fishing boat. When they arrived at the launching ramp, Mr. Lutz positioned the car and trailer on the ramp about fifteen to twenty feet from the water. As was their custom, Mr. Tyler then got out of the car and proceeded to undo the boat and get it ready to launch. Completion of his tasks in connection with launching the boat required three or four minutes time. Part of his activity during the launching was to loosen and hold the "floating rope," about thirty feet long, while the trailer was backed into the water so as to float the boat. He would then hold this floating rope to secure the now-free boat, while Mr. Lutz drove the car and trailer forty to sixty feet away to park. At this point, the rope in Mr. Tyler's hand was attached to the boat, which was still on the trailer, which in turn was attached to the car.

All went routinely until Mr. Lutz, mistakingly thinking the boat had floated free, drove up the ramp and parked the vehicle. While locking the passenger side door, he heard Mr. Tyler's pleas for help, and, looking back through the passenger-side window, saw Mr. Tyler lying on the ground, seriously injured. He managed to get Mr. Tyler to the hospital. There he learned from Mr. Tyler that the boat had not floated free and that the deceased, assuming his son-in-law would pull forward and back in again, had continued to hold the floating rope. As soon as Mr. Tyler saw that Mr. Lutz planned to park the car, he dropped the rope, not realizing that he was standing on another part of it. The force of the car pulling forward looped the rope around the instep of Mr. Tyler's left foot, resulting in his being ____ [7] off his feet and dragged along behind the car and trailer. Mr. Lutz was oblivious to this series of events because the windows of his car were closed, and the back window was fogged.

On July 11, 1973, Mr. Tyler died from the injuries sustained in this accident.

On February 13, 1974, Plaintiff filed this suit, seeking to recover under the following language of a limited coverage agreement between Mr. Tyler and the Defendant:

>   .   .   .   The company insures (Mr. Tyler)   .   .   .   against loss of life   .   .   .   resulting   .   .   .   from bodily injuries   .   .   .   caused by accident occurring while this policy is

---

7. The parties were unable to agree on the proper word to be inserted here. Insured requests that "jerked" be inserted and Insurer requests the use of "pulled". Since all can readily envision what happened in a physical operational sense we leave the esoteric differences if any to the Supreme Court of Alabama to divine and choose.

in force and arising out of the following specific hazards:

(c) driving . . . or riding in or on, boarding or alighting from

(1) any pleasure type automobile . . . or

(d) being struck by any automobile, truck or public conveyance.

## QUESTIONS FOR ALABAMA SUPREME COURT

1. Whether as a matter of Alabama law the word "alighting" contained in clause (c) of the Insuring Agreement of the subject insurance contract can be construed to include the activity in which the insured was engaged at the time the chain of events concluding in his injury began.

2. Whether as a matter of Alabama law the word "struck" contained in clause (d) of the Insuring Agreement must be construed as requiring some sudden impact rather than any contact resulting from the motive force of the automobile and ending in injury.

3. Whether as a matter of Alabama law the phrase "by any automobile, truck or public conveyance" can be construed to include being struck, as defined by the answer to question 2 above, by a tangible object attached or connected to the automobile but not properly part of the automobile itself.

4. Whether as a matter of Alabama law being pulled down and dragged by a rope attached to a boat which is resting on a boat trailer connected to an automobile, on which the insured was accidentally standing when the automobile started forward, can be construed as being covered under the provisions of clause (d) of the Insuring Agreement.[8]

---

8. The Insurer requested this additional question.

9. We repeat again what we often have said: "[T]he particular phrasing used in the certified question is not to restrict the Supreme Court's consideration of the problems involved and the issues as the Supreme Court

The entire record in this case, the Court's opinion, together with copies of the briefs of the parties, the letter directive, counsels' memoranda on certification, proposed certification with differences and all of the papers are transmitted herewith.[9]

perceives them to be in its analysis of the record certified in this case. This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are to be given, whether as a comprehensive whole or in subordinate or even contingent parts." *Martinez v. Rodriquez*, 5 Cir., 1968, 394 F.2d 156, 159, n. 6.