Nicholas NARDONE, an infant, by his father and next friend, Nicholas H. Nardone, and Nicholas H. Nardone, Individually, Plaintiffs-Appellants,

v.

David H. REYNOLDS, Theodore Sarafoglu, Fredie P. Gargano and Metropolitan Dade County, a political subdivision of the State of Florida, Donald Sheffel, American Home Assurance Company, Hartford Accident and Indemnity Company, and Insurance Company of North America, Defendants-Appellees.

No. 72–2264.

United States Court of Appeals,
Fifth Circuit.

Sept. 17, 1976.

Abraham H. Shukat, Miami Beach, Fla., Alfred S. Julien, New York City, for plaintiffs-appellants.

S. O. Carson, John H. Wahl, Jr., Miami, Fla., for Reynolds and Hartford Ins. Co.

Frank A. Lane, Miami, Fla., for Ins. Co. of North America.

Steven R. Berger, Miami, Fla., for Sheffel.

Henry Burnett, Miami, Fla., for Gargano, American Home Assurance and Metropolitan Dade County.

John R. Hoehl, James E. Tribble, Miami, Fla., for Gargano.

Before BROWN, Chief Judge, and WISDOM and AINSWORTH, Circuit Judges.

JOHN R. BROWN, Chief Judge:

The Nardones filed this medical malpractice suit in May 1971, more than five years after Nicholas Nardone's treatment at and discharge from Jackson Memorial Hospital in Dade County, Florida. The District Court granted summary judgment for the several defendants [1] on the basis that the claim was barred by the four-year statute of limitations applicable to Florida medical malpractice actions. FSA § 95.-11(4).[2] Because the case presented important policy questions concerning Florida's "discovery rule" and the meaning of the term "injury" as they affect commencement of the limitations period, we certified the case to the Florida Supreme Court. *Nardone v. Reynolds*, 5 Cir., 1975, 508 F.2d 660. The Florida Court has now handed down an extensive opinion clearly answering all of the certified legal issues.[3] *Nar-*

---

1. The named defendants include Drs. David H. Reynolds, Theodore Sarafoglu, Fredie P. Gargano, and Donald Sheffel, Metropolitan Dade County (owner of the hospital), and their respective insurance companies.

2. The statute has since been amended to provide basically a two-year statute of limitations. FSA § 95.11(4)(b) (Supp.1976).

3. This case once again indicates the value of the magnificent tool of certification. We recently have had opportunity to praise this aid to federal-state harmony, as it is permitted in Alabama and Louisiana as well as Florida, in *Tyler v. Insurance Co. of N. Am.*, 5 Cir., 1975, 520 F.2d 341, on certification, 1976, 295 Ala. 466, 331 So.2d 641, on receipt of answers to certifications, 5 Cir., 1976, 520 F.2d 341 and *Barnes v. Atlantic & Pac. Life Ins. Co.*, 5 Cir., 1975, 514 F.2d 704, on certification, 1975, 295 Ala. 149, 325 So.2d 143, on receipt of answers to certifications, 5 Cir., 1976, 530 F.2d 98.

*done v. Reynolds,* Fla., 1976, 333 So.2d 25. We remand to the District Court for further consideration of the single, only narrow question left open under the Florida Court's opinion.[4]

The sad facts of the case detailing the deterioration of young Nardone to a coma-tose state of blindness and irreversible brain damage[5] are presented at length in the Florida opinion. *Nardone v. Reynolds, supra,* 333 So.2d at 28–29.[6] On certification this Court submitted and the Supreme Court of Florida answered the following dispositive questions:

| Questions | Answers[7] |
|---|---|
| "I. In a medical malpractice case does the period of limitation (F.S.A. 95.11(4)) commence: | |
| (a) As to the parents and legal guardians of the incompetent minor in their own right | |
| (b) As to the parents and legal guardians of the incompetent minor as next friends in behalf of the minor | YES 'As to all plaintiffs. |
| (c) As to the incompetent minor in his own right when the parents and legal guardians of the incompetent minor have (i) knowledge of the physical condition and the drastic change therein during the course of medical treatment, but (ii) do not then have (or are not charged with having) knowledge that such physical-mental condition was caused in whole or in part by acts or non-acts of the alleged malpractitioners? | |
| II. Is knowledge of the contents of the medical doctor, hospital, etc. records concerning the incompetent minor patient which are of a character as to be obtainable by, or available to, the patient (or guardian) but the contents of which are actually not known, imputed to: | YES As to all plaintiffs. |
| (a) The parents and legal guardians of the incompetent minor in their own right? | |

4. This opinion is not written so all who run may read. It is structured on the basis of our prior opinion, the accompanying unpublished detailed certificate, and the Florida Supreme Court's opinion.

The Court phrases the single issue:
Evident from the record, the United States District Court's decision, the certificate of facts, and as conceded by the parties, the injury was patent and therefore there could be no concealment and resulting duty to disclose the fact of the injury on the part of the physicians. The record is not clear on the cause of the injury and on this issue we render no opinion as to whether this was an adverse condition known to the doctor for which he had a duty to disclose, failure of which would toll the statute.
*Nardone v. Reynolds, supra,* 333 So.2d at 40.

5. By proper suggestion of death we are now informed that young Nardone has since died.

6. These questions were phrased by us because of the inability or refusal of counsel to agree (see n. 7, 508 F.2d at 664) contrary to our preferred practice, *Bobby Jones Garden Apartments, Inc. v. Suleski,* 5 Cir., 1968, 391 F.2d 172, of having counsel formulate the certificate and questions.

7. See note 7 on page 1134.

| Questions —Continued | Answers [7]—Continued |
|---|---|
| (b) The parents and legal guardians of the incompetent minor as next friends in behalf of the minor? <br><br> (c) The incompetent minor in his own right? | YES <br> As to all plaintiffs. |
| III. Under the Florida doctrine of tolling limitations by fraudulent concealment, where there is knowledge by the parents of the incompetent minor of the physical-mental condition but not the cause as set forth in I above, does non-disclosure by one or more of the alleged malpractitioners of possible causes of the such condition unaccompanied by mispresentation toll the statute: <br><br> (a) as to all of the alleged malpractitioners? <br><br> (b) as to individual alleged malpractitioners who did not participate in the asserted 'concealment'? | NO <br> As to all defendants. |
| IV. Where there is knowledge by the parents as set out in I and III above but no request by them for such information did the alleged malpractitioners, each considered individually, have: <br><br> (a) a duty to make disclosure to the parents of the records and the essential, material significant facts relating to possible or likely causes of the minor patient's condition and change therein? <br><br> (b) If the answer to (a) is 'yes' what is the consequence if any on the statute of limitations?" | NO <br> As to all defendants. |

Of course we accept these answers as authoritative determinations of Florida law and as a result the case is now narrowed to a very small compass.[8] The defendants argue that the answers to Questions I and II require that we affirm the entire summary judgment entered below, because the Florida Court states unequivocally the Florida rule that the statute of limitations began to

---

7. We have arranged this table for convenience of discussion and the reader's ease. This was not the format of the Supreme Court's opinion but its answers are categorical. *Nardone v. Reynolds, supra,* 333 So.2d at 40 (*see* discussion of Question I at 32–34, Questions II at 34, Questions III and IV at 35–39.

8. Under the Florida opinion, Questions I, II, III, and IV are foreclosed. The Court also held that there were no misrepresentations. Likewise on our independent review of the record under federal standards, we hold as to all matters save the single issue left open by the Florida Supreme Court summary judgment was justified. F.R.Civ.P. 56; *Boeing Company v. Shipman,* 5 Cir., 1970, 411 F.2d 365, 374.

run once the plaintiffs knew of Nicholas' pitiful condition. For this purpose they did not have to know of the underlying cause or the asserted fact that such cause (or causes) were due to professional negligence. But the fact that the statute normally would start to run is not the answer since the real question is whether it was tolled.

■ The plaintiffs are charged with knowledge of Nicholas' *condition*[9] as of 1965 and with knowledge of the records as these were available to and obtainable by them. But the categorical answers to the certified questions do not require that we affirm in total the summary judgment for defendants on the limitations issue. The Florida Court after a careful review of the various views concerning fraudulent concealment and the tolling of the statute of limitations, *see* Louisell & Williams, Medical Malpractice, ¶ 13.11 at 379 (1975), concluded that "the fiduciary, confidential relationship of physician-patient [imposes] on the physician a duty to disclose . . . known facts . . . ." *Nardone v. Reyn-*

*olds, supra,* 333 So.2d at 39. Therefore the statute is tolled if there is this fiduciary relationship and a failure to disclose a cause known by the doctor or discoverable by him through efficient diagnosis. *Id.* Questions III and IV speak of possible or likely causes and the Florida opinion states unequivocally that there is no duty to disclose these or any causes based on conjecture.[10] But "[w]here an adverse condition is known to the doctor or readily available to him through efficient diagnosis, he has a duty to disclose and failure to do so amounts to a fraudulent withholding of facts, sufficient to toll the running of the statute." *Id.*[11]

To the suggestion there should be a remand to determine this limited factual issue, the defendant professionals urge that even assuming nondisclosure of a known condition/cause, the tolling stopped at the time the relationship of patient-doctor expired. They base this on some quotations in the Florida opinion, including a Mississippi diversity case in from the Fifth Circuit, *Sheets v. Burman,* 5 Cir., 1963, 322 F.2d 277, 280,[12] which state that the duty to inform

9. For ease in discussion throughout the term "condition" means the patient's deteriorated physical state which was apparent to all by March 1965. Similarly the "cause" means the medico-physical cause of this apparent condition in terms of actions done or not done by the respective professionals which from an operational-physical sense brought about the conditions.

10. The Court states:
> where the symptoms or the condition are such that the doctor in the exercise of reasonable diligence cannot reach a judgment as to the exact cause of the injury or condition and merely can conjecture over the possible or likely causes, he is under no commanding duty to disclose a conjecture of which he is not sure. Therefore, his silence as to a possible condition or cause which he is unable to verify in the exercise of reasonable diligence does not standing alone constitute sufficient fraudulent withholding to toll the statute of limitations.

*Nardone v. Reynolds, supra,* 333 So.2d at 39.

11. The Florida Court's going on to discuss this is in no way a contradiction of the negative answers to III and IV. No. III ruled out the duty to disclose "possible" causes and IV ruled out possible "or likely" causes. Actually the Court's discussion, 333 So.2d at 35–39 may not be specifically responsive to any of the categor-

ical questions. But this does not detract from the opinion as an authoritative declaration since, in the certificate, following our usual practice, we permitted, indeed invited, this very approach.
> "The particular phrasing used in the certified question is not to restrict the Supreme Court's consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis of the record certified in this case. This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are to be given, whether as a comprehensive whole or in subordinate or even contingent parts." *Martinez v. Rodriquez,* 394 F.2d 156, at 159, n. 6.

To the sometimes veiled suggestion this was a gratuitous statement not necessary to the Court's decision, it is at least considered dicta of hurricane velocity because its *Erie*-wind comes from the highest Court of the state. *Delduca v. United States Fidelity & Guaranty Co.,* 5 Cir., 1966, 357 F.2d 204, 206–07; *Kay v. Home Indemnity Co.,* 5 Cir., 1964, 337 F.2d 898, 900; cf. *West v. American Telephone & Telegraph Co.,* 1940, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139, 144.

12. *Sheets* concerned the Mississippi statute of limitations and the Court quoted from Indiana and Louisiana cases in discussing the tolling of

terminates when the formal doctor-patient relationship ends.

We do not read the opinion so strictly. Had the Florida Supreme Court thought so it would not have had any occasion to discuss the nature of this fiduciary duty. This is so because the Court expressly acknowledges that after July 1965, "none of the defendants had any further contact with the child," 333 So.2d at 29. Were the termination of the professional relationship the absolute bar urged, the case even on a duty to disclose known condition/cause basis would have been time barred in July 1969, making it wholly unnecessary for the Florida Court to struggle with timeliness of a suit filed in 1971.

We therefore, as a matter of Florida law, construe the Court's opinion as holding that with respect to limitations and tolling questions the consequences of the breach of the duty to disclose a condition/cause known by him *during* the continuance of doctor-patient relationship do not expire simply by reason of the termination of that consensual-contractual relationship. As a policy matter, this is especially desirable in cases such as this one in which the patient (or family) knows only of the condition, not the cause. To reason that on the termination of the doctor-patient relationship the patient is then free to consult others ignores several things, the first of which is that on the hypothesis of the disclosure rule, the doctor *knows* the condition/cause and the patient is entitled to be informed. Next, it may well be that no one subsequently can ever ascertain the condition/cause.

In summary, if the doctor during the existence of the relationship has or should

have knowledge of the cause of the condition, the statute is tolled so long as the doctor fails to reveal his knowledge to the patient.[13]

Several of the physician defendants also argue that even if the cause survives because of failure to inform, the fiduciary relationship exists only between the patient and the physician directly engaged by him or with whom he has direct contact. Therefore, radiologists, surgeons, or other doctors unknown to the patient would be relieved of the responsibilities that accompany the fiduciary relationship. In the light of today's highly refined medical-hospital practices we reject this reasoning. Whenever a patient is treated by a series of surgeons and doctors the fiduciary relationship exists regardless of whether the patient is aware who is treating him. This Hippocratic duty is born out of the doctor's purpose to render professional service. Treatment of infants, the senile and the unconscious proves that the duty does not spring from a consensual basis. It is possible that one or more defendants may be exonerated because they were doing a technical job that did not give them familiarity with a substantial portion of the medical record and therefore they had no way to learn of a specific causative incident. The mere fact that several doctors treated the patient or that some were not known to the patient does not by itself exonerate any defendant.[14] On remand the question must be directed to each of the doctors as to his relationship with the patient or family and his knowledge of any established condition/cause.

We do not intend to indicate any opinion on whether there is evidence that

---

the statute of limitations. *Sheets v. Burman, supra,* at 278–79.

**13.** Nothing we say indicates that the tolling may not be stopped at an earlier time when and as the patient (family) knows or reasonably should have known of the condition/cause.

**14.** Although we leave this to the District Court in the first instance, it appears that as to the

liability of the hospital, it would have no respondeat liability for breach of duty by the "independent contractor" doctors and could be held liable only for the actions of its employees or for its own direct failure to disclose. *See Bourgeois v. Dade County,* Fla., 1956, 99 So.2d 575, 577; *Wilson v. Lee Memorial Hospital,* Fla., 1953, 65 So.2d 40, 41.

the condition/cause was known to one or more of the physicians. But since the Supreme Court of Florida has expressed in binding terms the rule of law of Florida that this duty to inform does exist, we cannot say on the present record reviewing summary judgment that the facts were such that a trier could not arrive at any other conclusion. This is a matter that must be examined on remand by further appropriate proceedings.[15]

■ In remanding for this limited factual inquiry we are not holding that a trial is proper on the merits of the whole case.[16] The question is still one of the statute of limitations. Since it appears from the face of the record, the defendants are entitled to an appropriate trial or hearing on that issue before they are put to the time and expense of a full-blown trial on the merits of the entire case. The remanded issue may happen to require development within the frame of the basic question of liability as evidence is presented on the condition/cause and the knowledge of it as to

each one of the defendant professionals, but plaintiffs are not entitled at this stage to a trial on the merits. That point cannot be reached until there are findings by the trier as to each defendant regarding any breach of the duty to disclose any known or reasonably knowable cause or causes. *See Crummer Co. v. DuPont,* 5 Cir., 1958, 255 F.2d 425, 433, 1955, 223 F.2d 238, 249;[17] *Arkansas Natural Gas Co. v. Sartor,* 5 Cir., 1935, 78 F.2d 924, 929; *see Hooper v. Mountain States Securities Corp.,* 5 Cir., 1960, 282 F.2d 195.[18]

Here this truncated approach is applicable as it was in *Crummer.* The fact that some issues are foreclosed by the Florida Court and therefore summary judgment is proper as to them, does not eliminate issues where there is still a fact question. *See* F.R.Civ.P. 56(d). But a first step determination on the limited limitations question we have posed will obviate the immediate need for consideration of such difficult questions as damages, including pain and suffering, and may put an end to the litigation altogether. On remand, the District

---

15. One consideration bearing on the decision by the trier of fact as to the duty to disclose known conditions/causes is what information was available to plaintiffs, or anyone consulted by them, in the hospital records, the knowledge of which is imputed to all plaintiffs as a matter of law by the Florida opinion Question II.

16. We emphasize that the remand for a factual determination on this limited issue does not indicate any prediction by this Court that after further consideration the District Judge will decide that fact questions for jury resolution remain as to this issue as to each defendant considered separately. At that point a summary judgment for any or all defendants may be appropriate. *See Davis v. Liberty Mutual Ins. Co.,* 5 Cir., 1976, 525 F.2d 1204, 1208 (Brown, C. J., concurring in part and dissenting in part); *cf. Ingalls Iron Works Co. v. Fruehauf Corp.,* 5 Cir., 1975, 518 F.2d 966, 969 & n. 11.

If it proceeds to a trial on the limitation question, the Court suggests that any issues submitted to the jury be submitted under F.R.Civ.P. 49(a), as this will be a great benefit to the Court on review of any jury findings. *See Industries, Investments & Agencies (Bahamas) Ltd. v. Panelfab Int'l Corp.,* 5 Cir., 1976, 529 F.2d 1203, 1207 & n. 4; *Wolfe v. Virusky,* 5 Cir., 1972, 470 F.2d 831, 837 (Brown, C. J., concurring); *Hatfield v. Seaboard Air Line R. R.,* 5 Cir., 1968, 396 F.2d 721, 724 n. 10; J.

Brown, *Federal Special Verdicts: The Doubt Eliminator,* 1967, 44 F.R.D. 338.

17. In *Crummer* the District Court ruled the antitrust suit barred by the Florida statute of limitations. The plaintiffs claimed fraudulent concealment and this Court remanded for a trial on that issue. 223 F.2d at 249. The case came back to this Court after the trial court on remand directed a verdict that the statute of limitations was not tolled. We reversed and again remanded for a jury trial on the issue of fraudulent concealment. We stated: "We do not imply, as we cannot, what the ultimate finding will be on this issue; nor do we say that as a matter of law appellants have shown such lack of knowledge. We think they have shown sufficient facts which, when coupled with the assumptions that we must make on the record, entitled them to have a jury trial on the question of fraudulent concealment." 255 F.2d at 433.

18. In *Hooper,* which also included the threshold question of whether suit was barred by the statute of limitations, we said: "Of course, proof will have to be made and the trial court should be allowed considerable flexibility in adapting procedures for the trial and determination of this threshold issue." 282 F.2d at 206.

Court may make use of the record already developed and may establish any further record as necessitated by a determination of the limited undecided questions discussed.

The result is that except for this limited issue the summary judgment is sustained in the sense that it is not open for further inquiry or review. But since the summary judgment as a conclusory whole holds the actions barred by limitations on a critical element as to which there was insufficient evidence to warrant summary judgment, that judgment has to be vacated to permit the factual and legal determination of whether at the critical times any defendant, considered separately as to each, knew, or had reasonable grounds for knowing of the condition/cause and failed to disclose this to the patient/parents. If that determination—on summary judgment, if appropriate, or by the trier of fact—is that this limited duty of disclosure was not breached, judgment of dismissal would follow in behalf of the respective defendants, and appeal would lie from a final judgment. If the District Court determines the duty was breached, the case could proceed to trial on the full merits, but to prevent a costly trial the District Court might consider certifying the case for interlocutory appeal, 28 U.S. C.A. § 1292(b) which this Court would almost necessarily have to allow.

VACATED and REMANDED.