Albert MOSES, Sr., Plaintiff-Appellant,

v.

MARATHON OIL COMPANY,
Defendant-Appellee.

No. 83–4513.

United States Court of Appeals,
Fifth Circuit.

Jan. 2, 1985.

---

**20.** 361 So.2d 862 (La.1978).

Cline, Miller & Richard, Thomas D. Curtis, Rayne, La., for plaintiff-appellant.

Jeansonne, Gibbens, Blackwell & Briney, J. Louis Gibbens, New Iberia, La., for defendant-appellee.

Before BROWN, TATE, and HIGGINBOTHAM, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Plaintiff, Albert Moses, Sr., brought this action for personal injuries against Marathon Oil Company as a result of an accident which occurred on an offshore platform on June 10, 1980. Federal jurisdiction is based upon the Outer Continental Shelf Lands Act, and diversity of citizenship between the parties.[1]

Since the Outer Continental Shelf Lands Act mandates that state law be applied to fixed offshore structures such as the platform involved in this case,[2] Moses' claims were founded on Louisiana negligence law and on strict liability. In response to special interrogatories,[3] the jury found no defect in Marathon's platform and decided

---

**1.** 43 U.S.C. 1331, *et seq.;* 28 U.S.C. 1332; 28 U.S.C. 1331.

**2.** The Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331, 1333 provides in pertinent part:

(2)(A) To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws ... the civil and criminal laws of each adjacent State ... are declared to be the law of the United States....

In this OCSLA case the law of the state of Louisiana is adopted as surrogate federal law. *Rodrique v. Aetna Cas. and Surety Co.,* 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969).

**3.** We have repeatedly urged the use of special interrogatories. *See, e.g., Ware v. Reed,* 709 F.2d 345, 355 (5th Cir.1983); *Wood v. Diamond M Drilling Co.,* 691 F.2d 1165 (5th Cir.1982);

*Trailways Bus System, Inc. v. J.C. Motor Lines,* 689 F.2d 599 (5th Cir.1982); *Jones v. Miles,* 656 F.2d 103, 106 n. 3 (5th Cir.1981); *Guidry v. Kem Mfg. Co.,* 598 F.2d 402, 403, 405–06 (5th Cir. 1979); *Nardone v. Reynolds,* 538 F.2d 1131, 1137 n. 16 (5th Cir.1976); *reh'g denied,* 546 F.2d 906 (1977); *Jamison Co. v. Westvaco Corp.,* 526 F.2d 922, 934–35 (5th Cir.) *reh'g denied,* 530 F.2d 34 (1976); *Kestenbaum v. Falstaff Brewing Corp.,* 514 F.2d 690, 693–94 (5th Cir.1975), *cert. denied,* 424 U.S. 943, 96 S.Ct. 1412, 47 L.Ed.2d 349 (1976); *Simmons v. King,* 478 F.2d 857, 862 n. 12 (5th Cir.1973); *Burns v. Anchor-Wate Co.,* 469 F.2d 730, 734 n. 8 (5th Cir.1972); *In re Double D Dredging Co.,* 467 F.2d 468, 469 (5th Cir.1972); *Bailey v. Kawasaki-Kisen, K.K.,* 455 F.2d 392, 394 (5th Cir.1972). *See generally* Brown, *Federal Special Verdicts: The Doubt Eliminator,* 44 F.R.D. 338 (1967).

Moses was contributorily negligent.[4] However, the jury returned a damage award in Moses' favor. Following established law, the district court had no difficulty reconciling the jury's award of damages against Marathon with the strict liability and contributory negligence findings in Marathon's favor. As a result, the district court entered judgment for Marathon. Moses appeals, however, contending the jury's answers to special interrogatories were inconsistent and that the district court failed to give a requested instruction on contributory negligence which was required under the pre-comparative negligence law of Louisiana. We disagree and affirm the district court.

## I.

Moses was employed by Loffland Brothers (Loffland), an independent contractor performing drilling operations upon Marathon's offshore platform. Moses' injury occurred when he fell through a hole in the grating from the skid deck of the platform during the "nippling up" operation.

The offshore platform owned by Marathon has eight vertical legs resting on the floor of the Gulf. The bottom most deck is called the production deck, with the skid deck being approximately 20 feet higher up; approximately 20 feet above the skid deck is the fresh water deck, which is 10 to 15 feet beneath the actual drilling floor. The fresh water deck, though affixed to Marathon's platform, is part of the drilling rig owned by Loffland, the independent contractor hired by Marathon to drill the well. The Loffland crew was making preparations for drilling operations to begin and this required that blowout preventers be stacked one on top of another and bolted together. In appearance, this can best be likened to spools of thread being stacked on top of one another. There is an opening through the center of the blowout preventers through which the drill pipe passes. In order to conduct drilling operations, the blowout preventers must be directly vertical. This was the operation being conducted at the time of Moses' injury; the operation is called "nippling up."

As the blowout preventer stack rises from the bottom-most deck to several feet beneath the drilling floor, it must pass through the production deck, the skid deck, and the fresh water deck. In order to allow the blowout preventers to be installed, holes in the grating of each level must be cut, much like the baker removing the center of the dough before cooking a doughnut. The blowout preventers are then lined up in the center of these holes and fastened securely in place. Next, the grating, which was removed to allow installation of the blowout preventers, is rein-

---

4. Special Interrogatories

1. Do you find from a preponderance of the evidence that Marathon Oil Company was negligent in the manner claimed by plaintiff, and that such negligence was the proximate cause of plaintiff's damage?
Answer: Yes __XX__ No ____
(Note: If you answered "Yes", proceed to Question Two. If you answered "No", you need not answer Question Two or Three. Proceed directly to Question Four.)

2. Do you find from a preponderance of the evidence that plaintiff was himself negligent, and that such negligence was the proximate cause of his own injuries?
Answer: Yes __XX__ No ____

3. Do you find from a preponderance of the evidence that plaintiff voluntarily and knowingly assumed the risk?
Answer: Yes ____ No __XX__
(Note: If you answered "Yes", to Question Three, go not further.)

4. Do you find from a preponderance of the evidence that Marathon Oil Company had custody and control of the premises?
Answer: Yes __XX__ No ____
(Note: If you answered "Yes", proceed to Question Five. If you answered "No", you need not answer Question Five through Eight. Proceed directly to Question Nine.)

5. Do you find from a preponderance of the evidence that the hole in the skid deck constituted a defect in the premises?
Answer: Yes ____ No __XX__
(Note: If you answered "Yes" proceed to Question Six. If you answered "No", you need not answer Question Six through Eight. Proceed directly to Question Nine.)
  *    *    *    *    *    *

9. What sum of money do you find from a preponderance of the evidence to be the total amount of plaintiff's damages?
Answer in Dollars: $100,000.00
SO SAY WE ALL.

stalled and welded in place to fit snuggly about the stack.

Thus, the Loffland employees had cut holes in the Marathon platform in order to conduct their drilling operations. As a member of the Loffland team and as an experienced derrickman, Moses was aware that holes were present in the deck grating. In fact, he had worked in, around, and over the holes on Marathon's platform for four hours on the day of his accident. At the time of Moses' injury, he and a fellow employee had been sent to the fresh water deck, a part of the independent contractor's rig, to loosen a turnbuckle on the bell nipple. To loosen the turnbuckle, Moses stood on it at the same time he was loosening it. Testimony indicated that Moses stood on the turnbuckle because there was not enough room on the fresh water deck for both employees to stand.

The turnbuckle which Moses was attempting to loosen is a solid cylinder with a long bolt inside. With this design, it is impossible to see the threads inside the cylinder so that no one can know how much thread is left inside the cylinder. Moses did not know, nor could anyone else know, how many turns the turnbuckle could take before it would become completely unscrewed and fall apart. The turnbuckle extended from the bell nipple (blowout preventer stack) where it (turnbuckle) hooked into an eye on the bell nipple. The other end of the turnbuckle was latched to an eye on the beam of Loffland's rig.

As a derrickman for Loffland, Moses worked in high places, generally 80 feet above the rig floor on the derrick. He was instructed and trained to wear a safety belt when working in high places. The derrick has specific eyes to which this safety belt is attached, but in some areas there are no specific eyes or hooks and Moses had been instructed to tie his safety belt to a girder. Unfortunately, Moses did not use his safety belt when he was loosening the turnbuckle. As he turned the turnbuckle, it came apart and Moses fell through the opening in the fresh water deck of Loffland's rig, down to the skid deck, a distance

of 20 feet. He then rolled through the hole in the skid deck and fell another 20 feet to the production deck.

The jury found that Moses was contributorily negligent which barred his recovery under Louisiana law on the negligence claim against Marathon; the jury also found that there was no defect in Marathon's platform, ending Moses' claim for recovery under Louisiana strict liability law. However, because the jury also determined an amount of damages and found Marathon negligent without finding a defect, Moses appeals from what he describes as an inconsistent jury verdict. Moses also contends that there is reversible error because the court failed to give an appropriate instruction under Louisiana law on an employee's contributory negligence.

In effect, it is Moses' contention that he should recover for the injuries resulting from his second fall either under the theory that the holes in the platform gratings were defects for which Marathon is strictly liable, or because the jury could have found—had it been given the correct instruction under Louisiana law—that any negligence on his part ended when he hit the first deck and the injuries resulting from his fall to the lower deck were solely attributable to Marathon's negligence.

## II.

Moses makes much of the jury's answers to special interrogatories which found Marathon negligent as to allowing the hole to exist, but found no defect so as to absolve Marathon from strict liability. Yet, we can perceive no inconsistency because there are different tests employed to determine what is negligence and what is a defect. We have no trouble in understanding the jury's conclusion that the hole was not a defect because the testimony indicated that the hole had social utility after the stacking of the blowout preventers because its existence allowed tools to be passed between levels of the platform. Since the social utility in having the hole present outweighed any risk it posed in the jury's mind, they found no defect and Mar-

athon cannot be held strictly liable for Moses' injuries. Similarly, we have no trouble in understanding why the jury believed Marathon to be negligent. It was obvious to the jury that despite the hole's social utility, Marathon could have covered the hole when it was not in use so as to prevent people from falling through it. Accordingly, under the different tests used to determine negligence and strict liability, there is no inconsistency in the jury's answers to the special interrogatories.

### III.

■ The real question before us in Moses' appeal is whether the requested jury instruction on contributory negligence, denied by the district court, was mandated under Louisiana law, or whether the charge actually given by the court was sufficient. Moses contends that the district court's denial of his instruction, based upon *Hall v. Hartford Accident and Indemnity Company*, 278 So.2d 795 (La. 1973), is reversible error under *Herbert v. Gulf States Utilities Company*, 426 So.2d 111 (La.1983). Moses' contention requires a thorough examination of both cases.

In *Hall*, the employee of a motorcycle manufacturer was assembling a motorcycle wheel. The employee was injured when the tire he was inflating exploded. The *Hall* court defined contributory negligence as "conduct on the part of the plaintiff which falls below the standard to which he should conform for his own safety and protection, the standard being that of a reasonable man under like circumstances." *Hall* at 798. Moses contends that the appropriate jury instruction in the case before us turns on the *Hall* court's observation that "the extent of ... control is an important consideration in the issue of contributory negligence." *Hall* at 798. Moses argues that an instruction going to the issue of control would enable the jury to find him not contributorily negligent. In essence, Moses maintains that in certain situations the law of Louisiana, prior to the adoption of comparative negligence, allowed a degree of negligence on the part of an employee to escape the bar on recovery caused by the ordinary operation of a contributory negligence finding. Moses argues that *Hall* and its progeny carve out a sliding scale of contributory negligence prior to Louisiana's actual adoption of comparative negligence. With Moses' argument in mind, we consider the language of the *Hall* court:

> In considering negligence and contributory negligence in a given situation, a court does not necessarily demand identical conduct of the plaintiff and the defendant. Varying factors affect what the standard of the reasonable man requires. For example, the defendant may have more information than the plaintiff as to the risk involved or by reason of the particular enterprise may be required to obtain this information. These factors must be considered in measuring the reasonableness of each party's conduct.
>
> \*     \*     \*     \*     \*     \*
>
> [P]laintiff had nothing whatsoever to do either with designing the deficient assembly or with creating and maintaining the dangerous inflation procedure. He had no reason to know that the assembly was unsafely designed or that the pressure at the compressor was not safely controlled. He did not supply the inadequate gauge. It was not within his province to provide a method of restraining the tire during inflation. He simply used the materials and equipment supplied to him and followed the procedure outlined to him. His only causal relationship to the accident was that he momentarily continued to depress the button after the anticipated pressure was attained, although there was no instrument on the equipment supplied to him to indicate that the desired pressure had been reached.
>
> \*     \*     \*     \*     \*     \*
>
> When the party charged with the responsibility of observing safety factors fails to do so, it is grossly unfair to place the blame for a resulting accident on the person who poured the last cup of water before the defective dam broke, unless

that person also exercises a substantial amount of knowledgeable control over the dangerous situation. There was no such knowledge or control by plaintiff in the present case. We conclude that plaintiff's conduct was reasonable under the circumstances known to him, while the conduct of Allstate's insured was not in consideration of the circumstances which were known (or should have been known) by him.

*Hall* at 799–99 (citations omitted).

As we read *Hall*, it involved an unskilled laborer, new to his job, who was not aware of the danger inherent in the inflating process used in his work. Unlike the employee in *Hall*, Moses was an experienced derrickman who had received training and instruction in the use of his safety belt while working off the various decks of the offshore platform. Indeed, Moses had signed a statement that he understood the necessity for observing safe procedures, especially the use of a safety belt.

In *Herbert*, an action was brought by the contractor's employee to recover for injuries he received when he made contact with electrical transmission lines while constructing a metal building. The Louisiana Supreme Court held that the risk of injury from electrocution by inadvertently touching a power line only 11 diagonal feet away from where the iron worker was placing a 20 foot metal fascial angle on top of a metal building came within the scope of an electric utility's duty to exercise the utmost care. The facts in *Herbert* showed that the utility had specific knowledge of the risk of harm attending work at the construction site because of prior accidents involving its power lines. Thus, the court found the utility breached its duty of utmost care by failing to take protective measures, such as deenergizing adjacent power lines during the construction process. In essence, the court stated that even though the iron worker could be said to have been contributorily negligent in that he touched the electric lines with the metal angle, the fact that the lines were insulated only by elevation [5] and that the utility had knowledge of prior accidental contact with the power lines in the construction area, the worker's negligence would not bar his suit against the utility. Applying *Hall*, the *Herbert* court said the question is whether:

the party's conduct conformed to the standard of care that would be exercised by a reasonable man; or did the conduct breach a duty imposed upon the party to protect against the particular risk from which the accident resulted? In other words, did the plaintiff Herbert breach a duty to himself by failing to avoid the unreasonable risk created by the defendant utility company? We find that he did not.

*Herbert* had no part in deciding where to locate the metal building. No attempt was made by his superiors or the utility company to minimize the dangers of electrocution. His alternatives were "to try to tell his superior[s] how to run the job or to quit."

Upon remand, the *Herbert* court required the trial court to give an instruction based upon the language in *Hall*. Moses maintains that he was entitled to a similar instruction because he too had no alternative to performing the task of loosening the turnbuckle as ordered by his superiors. We disagree that *Herbert* stands for the proposition for which Moses argues. The *Herbert* court remanded to the district court for an instruction based on *Hall* because the instructions originally given in *Herbert* did not include any explanation of the varying elements of responsibility between the utility and the workman. We do not believe that *Herbert* means any action raising the defense of contributory negligence requires a *Hall* instruction of the varying elements of responsibility or is reversible error under Louisiana law.

It is obvious that *Herbert* involved a utility and its duty of utmost care—a far

---

**5.** Lines insulated by elevation are live wires suspended supposedly out of contact with people or equipment. In *Herbert* the lines were elevated in accordance with the industry standards in effect at the time of the accident, although not in effect at the time of the trial.

higher duty to protect a workman than is imposed upon Marathon to safeguard Moses as an employee of its independent contractor. Additionally, while Moses had no personal responsibility for cutting the hole in the deck grating, he had worked around it for quite some time prior to his accident. Unlike the injured workman in *Herbert*, who was given no safe alternative to installing the metal angle under the live power lines, Moses had a safety belt. But like the workman in *Herbert*, who was aware of the power lines, Moses knew that the cutting of holes in the three decks was necessary to the Loffland drilling operations. Thus, Moses had knowledge of the hole, even if he did not exercise control over it. The question before us is whether this lack of control comes within the ambit of the *Hall* instruction. We cannot see that it does. Unlike *Hall*, here there was a worker who was trained to use safety equipment and who knew he might fall if he did not use his safety belt. While Moses cannot be said to have had control over the hole, he certainly had control over the use of his safety belt which would have prevented his injury. Had the safety belt been used, there could have been no accident. This is much different than *Hall*

where the employee's use of the inflating pump had to be done within an unobservable range of tolerance to avoid injury. It is much different from *Herbert* where a utility had the duty of utmost care and was on notice of prior accidents involving its power lines at the construction site. Thus, the jury could find that Moses was negligent and his negligence was a primary cause of his injury. Marathon may be seen as negligent in that they allowed a hole to remain uncovered through which it was foreseeable that someone could fall and be injured. However, this does not offset the fact that Moses did not use the safety belt of his own volition, contrary to the instructions of his employer. Unlike *Herbert*, Marathon did not owe Moses the duty of utmost care in protecting him from his own negligence. Unlike *Hall*, Moses had a readily available safety device which would have prevented his being injured.

## IV.

■ Finding *Hall* and *Herbert* easily distinguishable from the facts at bar, we hold that the district court's jury charge adequately covered Louisiana contributory negligence principles.[6] Further, we have

---

6. In the relevant portion of its jury charge the court said:

For his first claim, the plaintiff alleges that the defendant was negligent and that such negligence was a proximate cause of damage sustained by the plaintiff. Specifically, plaintiff alleges that the defendant was negligent in allowing a hole approximately four feet by four feet to remain on the skid deck of the platform, unguarded and unprotected, when Marathon knew of its existence. In order to prevail on this claim, the plaintiff must prove by a preponderance of the evidence that the defendant was negligent and that such negligence was a proximate cause of the damage sustained by the plaintiff. Negligence is the failure to use reasonable care. Reasonable care is that degree of care which a reasonably careful person would use under like circumstances. Negligence may consist either in doing something that a reasonably careful person would not do under like circumstances, or in failing to do something that a reasonably careful person would do under like circumstances. Negligence is a proximate cause of damage if it directly or in natural and continuous sequence produces, or contributes

substantially to producing such damage, so it can reasonably be said that, except for the negligence, the loss, injury or damage would not have occurred. Negligence may be a proximate cause of damage even though it operates in combination with the act of another, some natural cause, or some other cause if such other cause occurs at the same time as the negligence and if the negligence contributes substantially to producing such damage. You are instructed that a person or firm, such as Marathon, who hires an independent contractor, such as Loffland Brothers, is not liable for the negligence of that contractor, either to employees of the independent contractor, or to third parties. You are further instructed that Marathon owed no duty to insure that Loffland Brothers performed their obligation in a reasonably safe manner. The law requires that a person be observant of where and how he is going so that he may avoid any dangers which ordinary care and prudence would disclose. While he is not bound to look for hidden dangers, he is required to work with his eyes open, to observe his course, to see that which is open and apparent, and he is required to use that de-

been unable to find any objection by Moses in the record to the charge's explication of Louisiana negligence law at the time the charge was given.[7] The objection made by Moses' counsel at the time the charge was read to the jury appears to go only to the district court's inclusion of assumption of the risk language as a defense to Moses' strict liability claim.[8] While there has been

gree of care which the surrounding circumstances would dictate to a person of ordinary reasonable prudence. The law can reject a custom in the industry as wanting in due care. Just because a negligent practice may have been repeated often does not make it due care. Plaintiff was an invitee on Marathon's premises. Marathon owed him the duty of reasonable and ordinary care which includes the prior discovery of reasonably discoverable conditions. The premises owner is not an insurer of the safety of those invited on its premises and under negligence principles is not liable for accidents occuring through no fault of the owner. If a preponderance of the evidence does not support the plaintiff's claim, then your verdict should be for the defendant. If, however, a preponderance of the evidence does not support the plaintiff's claim, you will then consider the defenses raised by the defendant. In addition to denying that any negligence of the defendant proximately caused any injury or damage to the plaintiff, the defendant alleges, as a further defense, that some contributory negligence on the part of the plaintiff, himself, was a proximate cause of any injuries and consequent damages plaintiff may have sustained. Contributory negligence is fault on the part of a person injured which combines in some degree with the negligence of another, and so helps to bring about the injury. By the defense of contributory negligence the defendant alleges in effect that, even though the defendant may have been guilty of some negligent act or omission which was one of the proximate causes of the accident, the plaintiff himself by his own failure to use ordinary care under the circumstances for his own safety, at the time and place in question also contributed one of the proximate causes of any injuries and damages the plaintiff may have suffered. *I instruct you that an employee whose employment requires certain acts is not contributorily negligent in performing them despite knowledge of a hazard being involved. The test is whether plaintiff's conduct was reasonable under the circumstances.* The burden is on the defendant alleging the defense of contributory negligence to establish by a preponderance of the evidence that the plaintiff himself was also negligent, and that such negligence was a proximate cause of the plaintiff's own damage. In Louisiana the plaintiff who is found to be guilty of negligence which is a proximate cause of his injury is barred from recovery, however slight that negligence may be. Marathon Oil Company has also raised the defense of assumption of risk. I remind you that plaintiff has asserted

two claims in this case, one for negligence and one for strict liability. Assumption of the risk is not a defense to strict liability, but may be a defense to negligence. A plaintiff who voluntarily assumes a risk of harm arising from the negligent or reckless conduct of the defendant cannot recover for such harm. To consider that the plaintiff assumed the risk, you must find that the defendant has proved two things by a preponderance of the evidence: that the plaintiff fully understood the danger which was involved and that plaintiff then voluntarily exposed himself to the danger, or risk of harm. *In this connection, you must determine the question on the basis of what this plaintiff in this lawsuit understood and what he incurred voluntarily.*

*       *       *       *       *       *

THE COURT: We have a message by the jury: What is meant by the proximate cause. The underlined. I guess these two paragraphs here is what I gave them before. Bring the jury in.

(WHEREUPON, THE JURY RETURNED TO THE COURTROOM, AFTER WHICH, THE FOLLOWING OCCURRED:

THE COURT: Members of the jury, in response to your question, negligence is a proximate cause of damage if it directly and in natural and continuous sequence produces, or contributes substantially to producing such damage, so it can reasonably be said that, except for the negligence, the loss, injury or damage would not have occurred. Negligence may be a proximate cause of damage even though it operates in combination with the act of another, some natural cause, or some other cause if such other cause occurs at the same time as the negligence and if the negligence contributes substantially to producing such damage. Is that helpful to you all? Okay. (emphasis added).

7. *See,* F.R.Civ.P. 51.

8.   MR. CURTIS: Your Honor, at this time I wish to make a note of an objection in so far as the strict liability portion of the charge was concerned. There was included therein an instruction which reads as follows: Or that the plaintiff fully understood the danger which was involved and then voluntarily exposed himself to that danger. And that such conduct was a substantial factor in bringing about plaintiff's own injuries, then you must return a verdict for defendant. I believe that that improperly includes an instruction on the assumption of risk in the strict liability por-

more than ample confusion in the prior reported Louisiana decisions as to whether contributory negligence is a defense to the concept of strict liability as found in the Louisiana Civil Code, recent pronouncements by the Louisiana courts indicate that contributory negligence is such a defense.[9] It is, of course, blackletter law that objections should be made at the time of trial so that the district judge has an opportunity to consider and rule upon them. *Dreiling v. General Electric Co.*, 511 F.2d 768 (5th Cir.1975).

AFFIRMED.

tion of the plaintiff's case, which is not at fault.

THE COURT: Objection is noted. We will be in recess.

**9.** For a thorough review of the Louisiana jurisprudence *see Hyde v. Chevron, U.S.A., Inc.*, 697 F.2d 614 (5th Cir.1983).